# SUPREME JUDICIAL COURT

## AT THE OCTOBER SESSION 1861, AT BOSTON.

PRESENT :

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. THERON METCALF,
Hon. PLINY MERRICK,
Hon. EBENEZER R. HOAR, } Justices.
Hon. REUBEN A. CHAPMAN,

## BARNSTABLE COUNTY.

### Caleb Lombard *vs.* Benjamin Oliver & others

No action lies against the selectmen of a town for refusing to put upon the list of voters therein the name, and rejecting the vote, of one who was not a legal voter, although the proof produced by him to them was sufficient to establish, *prima facie*, his right to vote; and they may prove at the trial that in fact he was not a legal voter.

Tort against the selectmen of Wellfleet, for refusing to put he plaintiff's name upon the list of voters, and rejecting his vote, at several elections in that town.

At the trial in the superior court, the defendants offered evidence to prove that the plaintiff was not legally entitled to vote in Wellfleet, at the several times when his vote was refused by

the defendants; but *Vose*, J. ruled that no facts in reference to his right to vote could be proved, which were not laid before the defendants when he made his claim, or which were not then personally known to them. The jury returned a verdict for the plaintiff, with $600 damages, and the defendants alleged ex-ceptions.

Other facts and rulings in the case became immaterial.

*H. A. Scudder*, for the defendants.

*B. F. & H. L. Hallett*, for the plaintiff, cited *Blanchard v. Stearns*, 5 Met. 298; *Waite* v. *Woodward*, 10 Cush. 143; *Harris* v. *Whitcomb*, 4 Gray, 435; Rev. Sts. c. 3, § 9.

BIGELOW, C. J.  In the trial of this case, one of the issues which was presented by the pleadings seems to have been over-looked by the court. The only question which appears to have been regarded as open before the jury was, whether the plaintiff, before offering his vote at the meetings of the inhabitants of the town alleged in the declaration, furnished to the defendants sufficient evidence of his having the legal qualifications of a voter. It is true that the plaintiff, in order to maintain his action, was bound to assume the affirmative of this issue, and to prove it to the reasonable satisfaction of the jury, and if he established it, he would thereby make out a *prima facie* case, which, in the absence of controlling proof, would entitle him to a verdict. Rev. Sts. c. 3, § 9.  Gen. Sts. c. 6, § 11; c. 7, § 10. *Blanchard* v. *Stearns*, 5 Met. 298.  But it is a mistake to sup-pose that this was the only question of fact which was open on the pleadings. Another material issue was raised by the an-swer.  The defendants alleged that the plaintiff, at the time he sought to have his name placed on the list and claimed the right to deposit his vote, was not in fact a legal voter in the town. In support of this averment in their answer, the defendants offered evidence which was rejected by the court.  But a little attention to the nature of the action and to the grievance of which the plaintiff complains will show that this allegation, if established by proof, is a perfect bar to the action.  It is the legal right to vote which the plaintiff seeks by this suit to vindicate.  It is for a violation of this right that he claims a

compensation in damages. He alleges that it was by the wrongful acts and refusals of the defendants, in their capacity as selectmen of the town, that he was deprived of the privilege of exercising the elective franchise, to which he was entitled as a legal voter in the town. The gist of his action is not that the defendants refused to put his name on the list, or rejected his vote. These are immaterial averments, unless coupled with the other and fundamental fact, that he was at the time a legal voter in the town. If he did not possess the legal qualifications of a voter, then no wrong was done to him by the defendants for which he can maintain an action. On the contrary, if his name had been placed on the list and his vote had been received by the defendants, he would have thereby gained no right, but only obtained the means by which he might have deposited unlawful votes and thereby subjected himself to indictment.

The misapprehension at the trial probably arose from an erroneous application of the provisions contained in Rev. Sts. *c.* 3, § 9, as explained and expounded in the case of *Blanchard* v. *Stearns, ubi supra.* That enactment followed substantially the provision embodied in the previous statute of 1822, *c.* 104, § 4. Previously to the passage of the latter statute, under the decisions of this court, selectmen were held liable to actions for refusing to receive the vote of a person legally qualified, although they acted according to their best judgment, without malice, and without being guilty of any negligence in the performance of their duty. It is obvious that this rule of law would operate with great hardship on public officers, upon whom was imposed the difficult task of deciding suddenly, without opportunity for examination of facts, upon the qualifications of voters. The object of the provisions of the statutes above cited was to relieve in some degree the harsh operation of this rule of law, by exempting selectmen from liability for omitting the name in the list of voters and for refusing the vote of any person, unless he should, before offering his vote, furnish them with sufficient evidence of his having the legal qualifications to entitle him to vote. It cannot be contended that these

statutes were designed to confer any new right on the voter. On the contrary, they cast upon him a new burden. They compelled him to be ready with proof of his right to exercise the elective franchise, in order that he might offer it to the selectmen, and exempted them from liability in case of refusal to allow him to vote, unless the evidence should be found sufficient to show that such refusal was erroneous. But they gave him no new cause of action. They did not entitle him to recover, if he was not a legal voter in the town, merely because he offered to the selectmen evidence which *prima facie* established his right to vote. If such was the effect of the statute, then it would follow that any person who, by producing false testimony before the selectmen, or by suppressing facts having a material bearing on the question, might make out before them an apparent right to vote, might also sustain an action for the rejection of his vote, although it might be shown that in fact he was not at the time a legal voter in the town. There is nothing in the statutes to lead to such an absurd conclusion.

The truth is, that in actions of this nature two issues may be presented on which, if properly raised by the pleadings, it is the duty of the jury to pass. One is the question whether the plaintiff, at the time he claimed the right to vote, seasonably submitted to the selectmen sufficient evidence that he was possessed of the qualifications entitling him to vote. If he did, then this evidence would make out a *prima facie* case which would entitle him to a verdict in the absence of controlling proof. But it would be competent for the defendants to raise another issue, and to show, although he did offer evidence to them, which if it was true and embraced all the facts bearing on the question, would have entitled him to vote, that nevertheless this evidence was false, or that facts were suppressed or kept back which proved that at the time he was not a legal voter in the town. If such evidence was offered, and it appeared to the satisfaction of the jury that the plaintiff had no legal right to vote at the time his vote was tendered and refused, then the plaintiff must fail in his action, because in such case the

defendants would have deprived him of no right and have done him no wrong by the refusal of his vote.

Inasmuch as the jury were precluded by the ruling of the court from considering one of the main issues raised at the trial, and as many of the incidental questions raised by the exceptions may become immaterial upon another trial, we do not deem it necessary at this time to express any opinion concerning them. *Exceptions sustained.*