### FOR THE

## COUNTY OF WORCESTER, OCTOBER TERM 1862, AT WORCESTER.

### [CONTINUED FROM VOL. IV.]

━━━━━

PRESENT :

HON. GEORGE T. BIGELOW, CHIEF JUSTICE.
HON. CHARLES A. DEWEY,
HON. THERON METCALF,        } JUSTICES.
HON. PLINY MERRICK,
HON. REUBEN A. CHAPMAN,

---

## REUBEN S. DENNY vs. ERASTUS WILLIAMS.

The determination of the question whether a contract, which was made and was to be performed in another state, is within the statute of frauds, depends upon the laws of that state.

It is only when the whole evidence is insufficient in law to support a verdict for the plaintiff, that an exception lies to the refusal of the judge to withdraw the case from the jury.

If the evidence to show a delivery and acceptance of goods, sufficient to satisfy the statute of frauds, is so slight that the court would set aside any number of verdicts, finding such delivery and acceptance, that should be rendered upon it, *toties quoties*, it is the duty of the judge to withdraw the case from the jury; and an exception lies to his refusal to do so.

A delivery and acceptance of goods, sufficient to satisfy the statute of frauds, can only be shown by some clear and unequivocal act.

VOL. V.                    1

CONTRACT to recover the price of about 75,000 pounds of wool. The declaration contained six counts, three of which set forth an executory contract for the purchase of the wool, and three were for wool sold and delivered. The answer set up in defence, amongst other things, the statute of frauds.

At the trial in the superior court, before *Ames*, J., the plaintiff proved that the defendant agreed to purchase the wool of his brokers, in the city of New York, and introduced in evidence the brokers' note of the contract, which the judge ruled was insufficient in form to take the case out of the statute. The plaintiff then introduced evidence tending, as he contended, to show a delivery and acceptance of a portion of the wool, sufficient to satisfy the statute. This evidence was reported in full, and so much thereof as is now material is stated in the opinion. The defendant requested the court to rule, amongst other things, that, in order to entitle the plaintiff to a verdict, he must prove that there had been a delivery of the property sold to the defendant, and an acceptance of it by him ; and that there was no evidence to warrant the jury in finding either a delivery or an acceptance. He also contended that, assuming the testimony offered by the plaintiff to be true, the case ought nevertheless to be withdrawn from the jury, and a verdict directed for the defendant, or that the jury should be instructed that the defendant was entitled to a verdict, on the ground that the evidence was not sufficient, with all the inferences and deductions which could legitimately be drawn from it, to prove such a delivery and acceptance of the wool, or any part thereof, as to make him responsible upon the contract.

The judge declined so to rule, or to withdraw the case from the jury, but submitted it to them under instructions requiring them to find a delivery and acceptance of a portion of the wool, in order to warrant them in giving a verdict for the plaintiff, and defining what would be a sufficient delivery and acceptance for this purpose.

The jury returned a verdict for the plaintiff, with damages in the sum of $10,639.71 ; and the defendant alleged exceptions

*D. Foster*, ( *T. L. Nelson* with him,) for the defendant, cited *Thompson* v. *Alger*, 12 Met. 428; *Shindler* v. *Houston*, 1 Comst. 261; Browne on St. of Frauds, § 321; *Norman* v. *Phillips*, 14 M. & W. 277; *Morton* v. *Tibbett*, 15 Q. B. 438; *Russell* v. *Nicoll*, 3 Wend. 119; *Davis* v. *Shields*, 26 Wend. 341; *Shields* v. *Pettie*, 4 Comst. 122; *Decker* v. *Furniss*, 4 Kernan, 611; *Snow* v. *Warner*, 10 Met. 136; *Farina* v. *Home*, 16 M. & W. 119; *Holmes* v. *Hoskins*, 9 Exch. 753; *Hunt* v. *Hecht*, 8 Exch. 814; *Maberley* v. *Sheppard*, 10 Bing. 99; *Dole* v. *Stimpson*, 21 Pick. 387; *Gerard* v. *Prouty*, 34 Barb. 455; *Russell* v. *Minor*, 22 Wend. 659; *Leven* v. *Smith*, 1 Denio, 572.

*P. C. Bacon & F. H. Dewey*, for the plaintiff.

CHAPMAN, J.   The ruling of the judge, that there was no sufficient memorandum in writing of the contract, made it necessary for the plaintiff to prove either an executed contract, by sale and delivery, or a delivery and acceptance of a part of the property, so as to satisfy the statute of frauds, and supply the lack of a sufficient memorandum.

As the contract was made in the city of New York, and was to be performed there, the laws of the state of New York must govern us in respect to its construction and performance. In *Shindler* v. *Houston*, 1 Comst. 261, the court of appeals say that, to constitute a delivery and acceptance of goods, such as the statute of frauds requires, something more than mere words is necessary. Superadded to the language of the contract, there must be some act of the parties amounting to a transfer of the possession, and an acceptance thereof by the buyer; and the case of cumbrous articles is not an exception to this rule. The case is fully discussed, and the authorities are cited. Under our statute, it is also held that the acceptance must be proved by some clear and unequivocal act. *Snow* v. *Warner*, 10 Met. 136. Weighing and measuring are not always necessary to constitute a delivery and transfer of property, even when it is sold by weight or measure; but in cases where the property to be sold is in a state ready for delivery, and the payment of money or giving security therefor is not a condition precedent to the transfer, it may well be the understanding of the parties

that the sale is perfected ; and the interest passes immediately to the vendee, although the weight or measure of the articles sold remains to be ascertained. Such a case presents a question of the intention of the parties to the contract. *Riddle* v. *Varnum*, 20 Pick. 280. It is also settled that a contract may be one and entire in its origin, and yet, looking to the performance of different things at different times, it may be divisible in its operation. *Knight* v. *New England Worsted Co.* 2 Cush. 271. If the performance is several, and the contract divisible, an action will lie on each default. *Badger* v. *Titcomb*, 15 Pick. 409. The case is to be examined in the light of these principles.

The plaintiff offered evidence tending, as he contended, to prove a delivery and acceptance, sufficient to satisfy the statute. After the evidence on both sides was in, the defendant's counsel requested the court to rule that there was no evidence to warrant the jury in finding either a delivery or an acceptance. The court declined to give this instruction, but left it to the jury to decide, under instructions that are reported, whether there were a delivery and acceptance or not. The exception to this ruling brings the whole evidence before this court ; and the principal point argued here is, whether there was such evidence as ought to have been submitted to the jury.

The question whether the jury have found a verdict for the plaintiff against the weight of the evidence is not before us That question could not be raised in any way except by a mo tion for a new trial. If there was any evidence which it was proper to submit to a jury, the judge was right in submitting i' to them, and the exception must be overruled. It is only in a very limited class of cases that such a question can be brought to this court by exceptions. They are cases where the evidence is insufficient in law to support a verdict. *Commonwealth* v. *Packard*, 5 Gray, 101. *Chase* v. *Breed*, Ib. 440. *Commonwealth* v. *Merrill*, 14 Gray, 417. *Polley* v. *Lenox Iron Works*, 4 Allen, 329.

In such cases, a refusal of the judge to instruct the jury that the evidence is insufficient is a good ground of exception. It is

not necessary that there should be absolutely no evidence. The rule, as stated in Browne on the St. of Frauds, *c.* 15, § 321, is sustained by the authorities cited : " Whether there has been a delivery and acceptance sufficient to satisfy the statute of frauds is a mixed question of law and fact. But it is for the court to withhold the facts from the jury, when they are not such as can afford any ground for finding an acceptance ; and this includes cases where, though the court might admit that there was a *scintilla* of evidence tending to show an acceptance, they would still feel bound to set aside a verdict finding an acceptance upon that evidence." What this *scintilla* is, needs to be stated a little more definitely ; otherwise it may be understood to include all cases where, on a motion for a new trial, a verdict would be set aside, as against the weight of the evidence. It would be impossible to draw a line theoretically, because evidence in its very nature varies from the weakest to the strongest, by imperceptible degrees. But the practical line of distinction is, that if the evidence is such that the court would set aside any number of verdicts rendered upon it, *toties quoties*, then the cause should be taken from the jury, by instructing them to find a verdict for the defendant. On the other hand, if the evidence is such that, though one or two verdicts rendered upon it would be set aside on motion, yet a second or third verdict would be suffered to stand, the cause should not be taken from the jury, but should be submitted to them under instructions. This rule throws upon the court a duty which may sometimes be very delicate ; but it seems to be the only practicable rule which the nature of the case admits.

It appears by the report in this case, that in the summer of 1857 the plaintiff purchased a quantity of wool at Chicago, and sent it at various times to Pettibone & Co. of New York, wool brokers, whom he had made his agents to receive, store, grade and prepare it for sale, and also to sell it ; their rates of compensation being stipulated. In the month of August, after two hundred and eighty-one bales of the wool had been received, and about one hundred bales which had been purchased were on their way and expected to arrive, the defendant called on

1 *

Pettibone & Co., and made some examination of the wool on hand, and some inquiries about the whole; but made no con-tract. But, as the conversation at this time seems to have been referred to subsequently in making the bargain, it may be well to state it, as represented in the twenty-fifth answer of Pettibone's deposition. This witness was the person with whom the plain-tiff dealt. He says, " Mr. Williams came to our place in New York, and the conversation turned on the subject of wool, as usual, to my best recollection. I think I told him I had a lot of wool to sell, as usual. We went up stairs and there the wool lay opened. My impression is, he asked me what I asked for that wool. I answered ' Fifty-two and a half cents, six months.' I think he asked, ' What paper?' I think I answered, ' Erastus Williams's, if I could get it.' I don't recollect what followed. The conversation became general about the wool, its quality and condition, and where it came from. Then I think he asked me if fifty cents, six months, would buy it. I answered, I think, if I could get the offer, I would submit it to the owner."

The defendant called again on the 5th of September. The most particular statement of the conversation on that day is contained in the tenth answer, which was excluded by the court. It is as follows : " Mr. Williams remarked that he might want some portions of the wool for his son, or Winslow, I forget which words he used. I think he mentioned number two, but am not certain. (The witness had already stated that the wool had been graded, and described the grades.) I think that was it; that he would advise us on his return home. The rest he should want sold; us to sell for him; that was the substance of it. There might have been some other things, I don't recollect." In his thirteenth answer he says, " I think the substance of the conversation was this: that I offered him the wool for fifty cents, six months, his notes, and he said he would take it; or he offered me his notes, fifty cents, six months, and I took it." In his thirtieth answer he says, " I told Mr. Williams I thought there were about one hundred bales to arrive of this same lot. The wool that was to arrive was to equal in grade and condition the wool already opened, agreeing that the wool should average

as number one grade." In his thirty-first answer he says, " Tare actual, or three pounds to the bag. Bags to be charged at fifty cents apiece." In the thirty-second answer, " Don't recollect as to unwashed wool ; presume it was one third off for wool unwashed. That was our custom." The thirty-fifth cross-interrogatory is, " Will you swear Mr. Williams ever did agree that his notes should bear date before he had examined and accepted the whole wool ? " Answer, " I won't swear to anything. No, I don't suppose he did. I have no idea about it." To the forty-third cross-interrogatory he says, he agreed on the 8th of September that the whole lot of wool, both on hand and to arrive, should average number one of the grade that he divided it into. In his eighteenth answer he says : " The question arose, how long can this wool remain here free of expense to the buyer, to Mr. Williams, for instance. I think I stated, until the first of October ; after that, he was to assume the expense of the wool. The substance was, that if a man came in and wanted to buy the wool, I should have taken him up, and sold him the wool as Mr Williams's wool. That was the way I understood it." His twenty-first answer states that " he wanted we should sell it if we could."

The statements of Mr. Pettibone are fragmentary, and his memory seems to be very defective. His deposition is quite long ; but the foregoing extracts are all that need be made from it.

On the 7th of September a sale note was made by a member of the firm and sent to the defendant. It was supposed to be sufficient to bind the bargain ; but proved to be defective. On the 11th of September the defendant called and inquired if all the wool had arrived, and said he did not wish to give his notes till all the wool had arrived. Pettibone then added to his memorandum of the sale on his books, " The notes to be dated when all the wool is examined and ready to deliver. H. A. P." On the same day, the defendant said to Snyder, a member of the firm, after some conversation about the wool, " My son would like one or two of the grades to work in his mill, and I shall want that part to be shipped to him ; and the rest I shall want

you to sell for me. I will let you know which of the grades my son will want, and shall look to you to see that the wool that is coming is equal to what is here." The witness answered, " We will do so." This was after the defendant had received the sale note.

The correspondence of the parties has been produced. None of the letters of Mr. Williams contains anything tending to establish the plaintiff's case. A letter of Denny to Pettibone of September 15th, is significant: " The wool is in your lofts; is all right and ready to deliver; and before that can be delivered, the balance will be ready, and if it is not, he certainly will not be obliged to pay for it before he receives it." It appears from this that the plaintiff did not then understand that any of the wool had then been delivered; or that the notes were to be given till the whole was delivered. A letter of Pettibone & Co. of September 10th says, " We cannot get the paper for the wool until we get all the wool in. We want to get the wool in order and weighed up as soon as possible to do it." On the 11th of September they write, " He will claim a delay in the date of the notes, as he says the wool is not in a condition to deliver. What is the matter, and why this delay?" On the 12th of September they write, " We are as anxious as yourself to get the sale to Williams settled. The only delay will be in the arrival of the one hundred bales." September 21st, they write, " We are now packing and getting it in shape to weigh, and get in order to settle. We hope the balance will be along this week, or that we shall know where it is." These letters admit that none of the wool had then been delivered, and indicate that it could not be, till the remaining one hundred bales should arrive and be graded and weighed.

The residue did not arrive till September 25th, and proved to be ninety-seven bales. On the 26th of September the defendant wrote to Pettibone & Co., declining to take the wool, and assigning the delay as a reason. The wool was not all graded and weighed till October 20th.

All this testimony, as well as the testimony not cited, concurs in showing that the execution of the contract was to be entire.

The defendant wished the whole to be graded and weighed, so that he could decide, before making any sales, what portion to forward to his son; and also ascertain whether the quality of the whole conformed to the contract; and the amount for which he was to give his notes. There is no intimation in the conversation or the letters that the delivery was to be in separate parcels or at different times, or that the contract was in any respect divisible. And as to the agency of Pettibone & Co. the conversation stated does not show that they were to be the defendant's agents to accept the wool. They were the agents of the plaintiff as to the sale and delivery, and acted exclusively for him. The agency for the defendant, which was spoken of, related to the disposal of the wool after the delivery of it to the defendant and the acceptance by him. It could not have been a present agency to sell; because the defendant had not then determined what part he would desire to sell. He had first to consult his son. And before Pettibone & Co. could sell the wool as his agents, they would need instructions as to the terms of sale. There were no instructions on this subject.

It appears, therefore, that up to the time when the defendant repudiated the contract on the 26th of September, it stood merely in parol, without any act of delivery or acceptance, either actual or constructive.

The defendant would have had no right, by the terms of the contract, to take possession of any part of the wool, or sell any part, against the consent of the plaintiff; and there is no evidence that the plaintiff had in any communication with the defendant waived his rights in this respect, or that the defendant desired him to do so. The property remained unchanged. And as the contract was invalid by the statute of frauds, for want of a sufficient writing, and for want of a delivery and acceptance to satisfy the statute, instead of a writing, we think the jury should have been instructed to find a verdict for the defendant, on the ground that the evidence was insufficient in law to sustain a verdict for the plaintiff. There does not seem to us to be even a scintilla of evidence to prove any act of delivery or acceptance. *Exceptions sustained.*