###### FOR THE

## COUNTY OF WORCESTER, OCTOBER TERM 1863,. AT WORCESTER.

PRESENT:

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. EBENEZER R. HOAR, } Justices.
Hon. REUBEN A. CHAPMAN,

[CONTINUED FROM VOL. VI.]

## IRA BOND vs. LABAN S. BOND.

The ratification of a deed executed during insanity will not make it effectual as against the grantor's prior deed executed while he was sane, and recorded after the formal execution but before the ratification of the second deed.

A party seeking to establish a deed, the validity of which is questioned on the ground that the grantor was insane at the time of its execution, has no ground of exception to an instruction to the jury that, "if the insane delusion was such that the party, though knowing that he was making a deed and what its effect would be, yet was rendered entirely indifferent to property by an insane delusion that he was about to perish, or that others who would be affected injuriously were about to perish, so that he was incapacitated from a rational care for his interest or theirs, then the deed may be avoided."

A party seeking to establish a deed of an insane person on the ground that the grantor after his restoration to sanity, has ratified it by receiving and accepting the consideration has no ground of exception to an instruction to the jury that such acceptance must. to

have this effect, " be the intelligent act of the grantor, knowing that he was acting un
der the contract contained in the deed, and understandingly availing himself of the pro-
visions in the contract in his favor."

WRIT OF ENTRY to recover five parcels of land. The trial in
the superior court was before *Morton*, J., who signed the follow-
ing bill of exceptions:

" The demandant claimed the parcel described in the first
count of his declaration, by deed to him from Lydia Bond,
dated June 12, 1855, but not recorded till January 28, 1860.
The tenant claimed the same by deed to him from Lydia Bond,
dated December 28, 1859, and recorded the same day. The
demandant introduced evidence to prove the insanity of the
grantor at the date of her deed to the tenant, and also to prove
that the tenant had actual notice at that time of the prior unre-
corded deed of the demandant. The tenant claimed and offered
evidence to prove that, if the grantor was insane at the date of
the deed to him, she afterwards ratified it when sane. Upon the
question of ratification, the judge ruled that a person who makes
a deed while insane may ratify and confirm it upon becoming
sane, but, as it was admitted in this case that the prior deed to
Ira Bond was recorded before the ratification, if any took place,
such ratification would not make valid the deed to Laban S
Bond, as against the deed to Ira. Both deeds were voluntary
deeds.

" The demandant claimed the parcels described in the last
four counts under the will of Lydia Bond. The tenant claimed
the same under and by virtue of a deed of the same from Lydia
Bond to Eber Bond, dated February 16, 1860, and under the
will of said Eber. To defeat the deed to Eber Bond, the de-
mandant alleged and introduced evidence to prove that the
grantor was insane at the time she executed it. The tenant
denied the insanity, and claimed further that if she was then
insane she was afterwards restored to sanity, and then ratified
the deed to Eber Bond.

" The consideration named in the deed to Eber Bond was,
that he should support the grantor during her natural life. She
was at the date of the deed living in his house, and afterwards

became a member of his family and was supported by him and by his executor until her death, which occurred March 21st 1862. Upon the question of the insanity of Lydia Bond as affecting her deed to Eber Bond, the judge, against the objection of the tenant, ruled that if the insane delusion was such that the party, though knowing that she was making a deed and what its legal effect would be, yet was rendered entirely indifferent to property by an insane delusion that she was about to perish, or that others who would be affected injuriously were about to perish, so that she was incapacitated from a rational care for her interest or theirs, then the deed may be avoided. The tenant asked the court to instruct the jury that the deed of an insane person, being only voidable and not void, becomes a binding contract upon the grantor and those claiming under him, if when he becomes sane he adopts and ratifies it; and that if Lydia Bond availed herself of the contract by receiving the consideration or purchase money due upon it after her restoration to sanity and with an understanding of the contract, that was a ratification and adoption. The judge did so instruct the jury, with the qualification that it must in this case be the intelligent act of Lydia Bond, knowing that she was acting under the contract contained in the deed, and understandingly availing herself of the provisions in the contract in her favor.

" The tenant asked the court further to instruct the jury that, if Lydia Bond was of an unsound mind at the time she executed the deed, upon coming to the full possession of her mental faculties she could not avoid the deed, unless she restored the price or consideration she had received and surrendered the contract for her support. But the judge declined so to instruct the jury, except so far as the prayer for instructions is affected by the next preceding instruction. There was no other contract except that contained in the deed to Eber Bond."

The jury returned a verdict for the demandant, and the tenant alleged exceptions.

*P. C. Bacon & P. E. Aldrich,* for the tenant. 1. The deed of an insane person is valid, until avoided by some act of the grantor. *Gibson* v. *Soper,* 6 Gray, 279, and cases there cited.

The grantor did nothing after executing the deed to the tenant which would make it impossible for her to ratify it. If the demandant put his deed on record, that was no act of hers. 2. The instruction upon the question of insanity was erroneous, in assuming that the insane delusion named would render the person affected by it entirely indifferent to property. If the delusion was real, and she believed that she was about to die, that would by no means make her regardless of property in any such sense that she would not wish to see it properly disposed of. Besides; the instruction did not require the jury to find that her deed was the direct result of the delusion. It was necessary for the demandant to show that the deed was directly traceable to the delusion, and was the offspring of it. *Dew* v. *Clark*, 3 Addams, 79, 93–97. *Dunham's Appeal*, 27 Conn. 192. *Hill* v. *Nash*, 41 Maine, 585. 1 Jarman on Wills, (4th Amer. ed.) 53, and cases there cited. A mind may be partially sane and partially insane at the same time. Cannot the sane part of the mind in such case perform a valid act, if the insane part has nothing to do with it? The instruction left the jury at liberty to find that she was so insane as to invalidate her deed, although her delusion had no effect in leading to the conveyance. It also left them at liberty to find that, if she was simply under a delusion that other persons were about to perish, so that she was incapacitated from a rational care for their interest, the deed might be avoided; and this, although the deed was not the result even of that delusion. 3. The judge should have instructed the jury that even if the grantor might have avoided her deed, yet the demandant could not do so without a return of the consideration and a surrender of the contract. 4. The last prayer should have been granted without qualification. *Butler* v. *Hildreth*, 5 Met. 49. *Norton* v. *Norton*, 5 Cush. 530.

*G. F. Hoar*, for the demandant. 1. No ratification could have effect, if made after the recording of the deed to the demandant. *Gibson* v. *Soper*, 6 Gray, 284. *Allis* v. *Billings*, 6 Met. 415. *Right* v. *Cuthell*, 5 East, 491. *Doe* v. *Goldwin*, 2 Q. B. 143. Story on Agency, §§ 246, 247, 440. 2. The instruction on the question of insanity was correct. 2 Greenl. Ev. § 371.

Erskine's argument in *Rex* v. *Hadfield*. *McElroy's case*, 6 Watts & S. 451. *Hale* v. *Hills*, 8 Conn. 39. *Dew*, v. *Clark*, 3 Addams, 79. It is not the true rule even in criminal cases that the delusion must produce the act. If the reasoning power is so far destroyed that the person is not restrained by the same considerations which would restrain a sane person, he is not responsible for his act. The test is, not only whether an insane delusion produces the act, but also whether there are the same powers which, with ordinary persons, would prevent it. But the rule is not the same in criminal and in civil cases. In the latter, if insanity exists to any extent, the contract is voidable. The law as to crimes is established for the protection of the community. Hope and fear are strong elements of restraint, even upon insane minds. And therefore if a person has intellect enough to have a fear of punishment operate to control his actions, the law may punish him with as much propriety as his keeper may. But the making of a contract is the work of two intellects opposed to each other; and the law therefore recognizes that they do not act on an equality, and prohibits the sane person from obtaining a bargain from the other. And there is not a case in the books, so far as discovered, which holds that a contract must be the offspring of an insane delusion, in order to be set aside. On the other hand, it is everywhere admitted that if insanity exists, the contract is void. 3. The other instruction was correct.

BIGELOW, C. J. The learned counsel for the tenant have contended very strenuously that the deed of an insane person, not being absolutely void, but only voidable at the election of the grantor, after reason has been restored, passes a good title to the grantee until a disaffirmance takes place, and that in the present case, the deed to the tenant having been made and delivered and duly recorded before the previous deed to the demandant was put on record, a valid title to the granted premises as against the demandant vested in the tenant. In other words, that the title of the tenant was defeasible only by the grantor; and that until the deed had been disaffirmed by her a title remained in the tenant, valid and sufficient to defeat the right of the demandant

to recover in this action, who claimed title only under a prior un-
registered deed.   We have no occasion to decide on the correct-
ness of this position, because no such point is open on these
exceptions.   It does not appear that there was any controversy
between the parties on the question whether the deed to the
tenant was sufficient to pass a present title, or that any ruling
was made by the court inconsistent with the doctrine which the
tenant now asserts and maintains.   To a defence founded upon
it, it is very clear that actual notice of the existence of the prior
deed to the demandant would have been a complete and deci-
sive answer.   Evidence of such notice was offered at the trial.
If the question of the validity of the tenant's deed, independent
of any act of affirmance or disaffirmance by the grantor, had
been raised, an issue of fact would have arisen as to the exist-
ence of notice of the demandant's deed, which must have been
passed on by the jury.   If the tenant omitted to raise the ques-
tion, he has by his silence deprived the demandant of an oppor-
tunity of maintaining his title by asking for a verdict on a fact
which would have rendered the question of law wholly imma-
terial.   In either view, he is estopped from now raising the ques-
tion as the ground of a new trial.   The exceptions afford us no
means of knowing the course of the trial, or of ascertaining the
facts on which the verdict in favor of the demandant was ren-
dered.   The rule is well settled that on exceptions no objections
can be considered which do not appear to have been raised and
passed on by the ruling of the court in the course of the trial,
or in the instructions given to the jury.   *Wentworth* v. *Leonard*,
4 Cush. 414.   *Tebbetts* v. *Pickering*, 5 Cush. 83.   *Bickford* v.
*Gibbs*, 8 Cush. 154.   A strict adherence to this rule is essential
to a due regard to the rights of parties and the regular and
orderly administration of justice.   It can be departed from only
when it appears there has been a mistake or misapprehension or
misapplication of legal principles to such an extent as clearly to
show that a case has resulted in a mistrial.

   1. Confining ourselves to a consideration of the objections to
the rulings as stated in the exceptions, it appears that there are
three only.   The first relates to the question of ratification of

the deed, under which the tenant claimed title, by the grantor after she had become sane.  This ratification, if made at all, took place after the demandant's deed was put on record.  The court ruled that such affirmance of the tenant's deed would not operate to give it validity as against the prior deed from the grantor to the demandant.  This was clearly right.  The grantor was estopped from doing any act, the legal effect of which would be to defeat the conveyance which she had previously given, when in her right mind, to the demandant.  The essential principle of the doctrine of estoppel is, that no force or effect can be given to any act or declaration of a party for the purpose of impairing or defeating any previous act or statement, the efficacy or truth of which it would be a fraud on his part to controvert or destroy.  Such would be the result, if the grantor in the present case were permitted to affirm the deed to the tenant.  The previous deed to the demandant was a valid conveyance, by which she had for a legal and valid consideration vested a good title in him.  It would operate as a fraud on him, if by any subsequent act of hers, without his knowledge or consent, she could impair or take away this title.  She certainly could not do it by a deed to a person having actual notice of such previous conveyance; a fortiori, she cannot be permitted to do it by mere acts or declarations in pais.  Nor can the tenant avail himself of a ratification made under such circumstances.  He had notice of the deed to the demandant when the alleged affirmance of his own conveyance was made by the grantor.  He does not stand as a bona fide purchaser claiming title by virtue of an act, of the nature of which he was not cognizant.  By setting up a ratification with notice of the fact which estops the grantor from making it, he in effect becomes a party to the legal fraud on which such estoppel is founded. This conclusion is in harmony with the rule that a party cannot make title to premises by a deed executed subsequent to a previous valid deed of which he has actual notice, or which has been duly recorded.  Certainly, we cannot give greater efficacy to acts in pais as confirmatory of a previous grant than would be given to a deed duly executed and delivered

2. It is also objected by the tenant that the ruling of the court as to the nature and degree of insanity which would be sufficient to invalidate a deed was erroneous in several particulars. But we cannot so regard it. It embraced all the essential elements which were necessary to constitute mental incapacity, as applied to the subject matter, and left the question to the jury to determine whether these elements were proved to have existed in the condition of the grantor's mind at the time she executed the deed to the tenant. If it appeared that she was affected with mental disease, which had culminated in a delusion that she and those who would inherit her property, or for whose pecuniary interest and welfare she would in the exercise of her reason have provided, were about to perish, and that thereby she was rendered indifferent to property and incapable of appreciating its uses and value, and had become reckless of or insensible to her own interests or the interests of those dependent upon her or connected with her, she certainly was not competent to make a valid disposition of her property by deed. Such an irrational and insane delusion would be directly connected with the act, and incapacitate her from understanding its nature or character, or the results which would flow from it. 2 Greenl. Ev. § 371 *a.* 1 Jarman on Wills, (4th Amer. ed.) 58. Shelford on Lunacy, 41 *et seq.*, 296. *Greenwood* v. *Greenwood*, 3 Curt. Eccl. Appx. xxx. xxxi. *White* v. *Wilson*, 13 Ves. 89. The ruling of the court in substance embraced the true principle applicable to the case, and, being put hypothetically, necessarily left to the jury to find whether the facts in proof concerning the mental condition of the grantor showed that she was at the date of the deed to the tenant, according to a just application of the principle, incompetent to make a valid conveyance of her property.

3. The remaining objection can be briefly disposed of. The tenant insisted and asked the court to instruct the jury that the grantor had ratified and affirmed the deed to him by receiving support from him after her restoration to sanity. The court instructed the jury in conformity to this request, with the qualification that such a ratification must be the intelligent act of the

grantor, with a knowledge that she was receiving support under the contract arising from the acceptance by the tenant of her deed to him. We are at loss to see any plausible ground of objection to this instruction. It was in substance only an enunciation of the familiar and elementary principle that a party cannot be bound by an agreement to which he has never assented, or by an act done without any intent or purpose to affect or impair his rights.             *Exceptions overruled.*