MORRIS GOLD *vs*. BOSTON ELEVATED RAILWAY COMPANY.

Suffolk. January 8, 9, 1923. — February 28, 1923.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Joint Tortfeasor. Release. Evidence,* Extrinsic affecting writing.

In an action of tort against an elevated railway company for assault and battery and false imprisonment, the defendant in its answer set up in substance that the defendant could not be held liable because the alleged torts were committed jointly with a third person, whom the plaintiff had released and discharged from liability. There was evidence tending to show that the plaintiff had interviewed the third person at the office of the attorney for the third person; that the third person had said to him, "I got a thousand dollars for you from the company [meaning the defendant]. I will give you $150. You give me a receipt, and you come around three or four weeks later and I will give you the rest of the money;" that the plaintiff intended merely to give the third person a receipt for the money and did not intend to release him or the defendant; that he could not read; that the paper he signed was not read to him; that he did not know its contents and

that he did not intend to sign any release. The instrument signed by the plaintiff was a release of all demands against the third party, whom the evidence showed was a joint tortfeasor with the defendant. A verdict was ordered for the defendant. *Held,* that

(1) The testimony failed to show fraud or misrepresentation inducing the plaintiff to sign the release;

(2) The preliminary request by the third party of the plaintiff that the plaintiff give a receipt was not the equivalent of a statement as to the contents of the particular paper afterwards signed;

(3) The plaintiff having admitted his signature to the instrument, testimony by him that it was a receipt and not a release properly was excluded;

(4) The intention or purpose of the plaintiff in signing was irrelevant and incompetent;

(5) The release of the third party discharged the defendant;

(6) The verdict rightly was ordered.

TORT with a declaration in two counts, the first count being for assault and battery and the second being for false imprisonment. Writ dated October 8, 1918.

The answer as amended contained allegations "that said assault, arrest and imprisonment of the plaintiff was made jointly with and at the instigation of one Isaac Simon; that the plaintiff has received from said Isaac Simon a sum of money in full satisfaction and discharge of all liability on the part of said Simon, whereby the plaintiff discharged the defendant from each and all of the causes of action set forth in his declaration."

In the Superior Court, the action was tried before *Wait*, J. The plaintiff in cross-examination was shown an instrument which in form was a release of Simon from all demands, signed by the plaintiff, and the following testimony was introduced: Q. (by the defendant's counsel) "At the time you received the $150 you signed your name to that paper?" A. "I didn't sign that paper — I signed that paper, but this wasn't written on it [indicating, meaning the words 'Releasing Simon.']" — Q. "Did you sign that paper?" A. "That is my signature that I received that $150." The defendant's counsel: "May I have everything in that answer, except the part saying that he signed this paper, stricken out?" The judge: "Yes." The plaintiff's counsel: "Save my exception. I ask that the entire answer stand as responsive." In redirect examination, the plaintiff testified: "When this case was on the trial list I was brought to the office of an attorney; these two cases being on the list for trial. I cannot read. Mr. Simon sent for me to go to his attorney; Mr. Simon said to me: 'Mr. Gold, I got

a thousand dollars for you from the company,' meaning the Elevated. 'I will give you $150. You give me a receipt, and you come around three or four weeks later and I will give you the rest of the money.' I gave him this receipt for the $150." — Q. "What did you do?" A. "Simply gave him a receipt for the $150." — Q. "Did you ever at any time intend to release Simon and the Elevated?" A. "No, sir." He further testified, "I did not know what the contents of that paper were. It was not read over to me. I never intended to sign any release." — Q. "Did you ever intend to release Simon?" A. "No, sir." — Q. "Did you ever intend to release Simon and the Boston Elevated?" A. "No. . . . The blank piece of paper was folded — there was some printing on it. He said, 'Mr. Gold, give me a receipt and I will give you $150.' He said he had got a thousand dollars for me."

Subject to exceptions by the plaintiff, the plaintiff was not permitted to testify that he never gave a release, that he did not sign a release, or how much "the case" was "being settled for."

Other material evidence is described in the opinion. At the close of the evidence, the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*E. M. Shanley,* for the plaintiff.

*J. E. Hannigan,* for the defendant.

RUGG, C.J. The testimony of the plaintiff was in substance that he was arrested by a special officer in the employment of the defendant at the instigation of one Simon, who charged him with being a pickpocket, and taken to the police station where he was confined until the next morning and then released, and "was satisfied to be let go." Thereafter he brought an action against Simon and was nonsuited when called for trial. He signed a paper shown to him on the witness stand, which was a release under seal running to Simon. At the time of signing it he received $150. The case at bar is governed by *Leddy* v. *Barney,* 139 Mass. 394, where at page 396 it was said, "The release under seal was valid between the parties to it, and could not be controlled by parol evidence. The plaintiff's own testimony showed that it was executed and delivered by him at the time he received the money. The facts, if true, that the paper was not read to him, and that he understood it to be a voucher for Reed, are not material on this

point. He did not ask to have it read; he had opportunity to know its contents, and it was his own fault if he did not know them." Those words were used respecting facts in no material respect different from those in the case at bar. *Atlas Shoe Co.* v. *Bloom,* 209 Mass. 563, 567. *Alemian* v. *American Express Co.* 237 Mass. 580, 585.

The testimony fails to show fraud or misrepresentation inducing the plaintiff to sign the release. The plaintiff did not testify that the paper which he signed was said to be a release by Simon or by any one, or that any representations as to its contents were made. The preliminary request during the negotiations to give a receipt was not the equivalent of a statement as to the contents of the particular paper when it was signed. *Barry* v. *Bay State Street Railway,* 222 Mass. 366.

The case at bar is distinguishable from *Rocci* v. *Massachusetts Accident Co.* 222 Mass. 336, *Halbert* v. *Brooks,* 238 Mass. 471, and cases of like nature upon which the plaintiff relies.

The plaintiff, having admitted his signature to the paper in question, rightly was not permitted to characterize or describe it. The intention or purpose of the plaintiff in signing was irrelevant and incompetent. The written document spoke for itself. *Butterick Publishing Co.* v. *Fisher,* 203 Mass. 122, 133. *Spevack* v. *Budish,* 238 Mass. 215, 217, and cases collected. *Muse* v. *De Vito,* 243 Mass. 384.

The release of Simon, who on the record was the primary instigator of the wrong to the plaintiff, released the defendant. *Brown* v. *Cambridge,* 3 Allen, 474. *Purchase* v. *Seelye,* 231 Mass. 434, 436. *Cormier* v. *Worcester Consolidated Street Railway,* 234 Mass. 193.

*Exceptions overruled.*