**Roy HAYDEN and Muriel Hayden, Plaintiffs,**

**v.**

**FORD MOTOR COMPANY, Defendant.**

**Civ. A. No. 63–40–M.**

United States District Court
D. Massachusetts.

Dec. 29, 1967.

Albert P. Zabin, Schneider, Reilly & Swartz, Boston, Mass., for plaintiffs.

John L. Lyman, Brickley, Sears & Cole, Boston, Mass., for defendant.

## MEMORANDUM

MURRAY, District Judge.

This action came on to be heard on defendant's motion for summary judgment, more particularly described below, and was argued by counsel for the parties.

In this diversity action brought by plaintiffs, residents of Massachusetts, against defendant Ford Motor Company (Ford), a Delaware corporation, it is alleged that Ford negligently failed to equip a Ford truck (truck) manufactured by it with a reasonably safe braking system and to use reasonable care in the inspection thereof, and that such failure resulted in plaintiffs' injuries on or about January 26, 1961 when the truck collided with the rear of plaintiffs' motor vehicle in which they were riding on a highway in Massachusetts. Plaintiffs also brought an action in the United States District Court of Rhode Island against Folgo Ford Sales, Inc., a Rhode Island corporation, and R. I. Metallurgy, Inc., also a Rhode Island corporation, seeking damages against each for the injuries caused by the same collision. In that action plaintiffs alleged that their injuries were caused by the negligent operation of the truck by R. I. Metallurgy, Inc. (Metallurgy), and, as against Folgo Ford Sales, Inc. (Folgo), alleged that as owner and in control it was negligent in leasing the truck to Metallurgy at a time when the truck was defective in its braking mechanism, and negligent in permitting Metallurgy to use the truck in that condition. The action in this court was transferred to the District Court of Rhode Island for trial, but the motion to consolidate the actions for trial was there denied; and it was then returned to this court. In the course of trial in the District Court of Rhode Island the actions against Folgo and Metallurgy were settled by the payment of $12,500.00 to plaintiffs contemporaneously with the delivery of a release to Folgo and Metallurgy. Thereafter, in this action Ford pleaded the release, and moved for entry of summary judgment on the ground that by the release Ford, as a joint tortfeasor, had been also released and thereby discharged from the liability claimed herein.

The issues are (1) whether the law of Massachusetts should govern the effect of the release given by plaintiffs, and (2) whether the release, properly construed, discharged the liability of defendant Ford to plaintiffs.

1. Since in the instant case jurisdiction of this court is based upon diversity of citizenship of the parties, the applicable rule of conflict of laws is governed by Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), which held that federal district courts should apply

the conflicts rule of the state where the court sits. In giving effect to that holding I find the Massachusetts rule is stated in Trudel v. Gagne, 328 Mass. 464 (1952) at pages 465–466, 104 N.E.2d 489 at page 490, to be that "[a]ll substantive rights of action growing out of [an] injury * * * have their origin in the law of the place where the wrong was done" and that "[d]etermination of the persons * * * entitled to sue upon [a cause of action] is [a] matter of substance * * * controlled by the law which creates the right * * *." The effect of a release has been held to be a substantive matter, DeBono v. Bittner, 13 Misc.2d 333, 178 N.Y.S.2d 419 (Sup. Ct.1958), aff'd 10 A.D.2d 556, 196 N.Y. S.2d 595 (1st Dept. 1960), and it follows that the question whether plaintiffs are barred by the release from maintaining this action is to be determined by the law of Massachusetts. Accord, Bowles v. Zimmer Mfg., 277 F.2d 868, 872, 76 A.L.R.2d 120 (7th Cir. 1960), Bittner v. Little, 270 F.2d 286–289 (3rd Cir. 1959), Melo v. National Fuse and Powder Co., 267 F.Supp. 611–612 (D.Colo.1967), Garlock v. New York Tree Savers, Inc., 199 F.Supp. 59, 60–61 (W.D.N.Y.1961), Pilosky v. Dougherty, 179 F.Supp. 148–149 (E.D.Pa.1959), Mayle v. Criss, 169 F. Supp. 58, 60 (W.D.Pa.1958).

2. Until 1963,[1] the law of the Commonwealth had been that the release of one joint tort-feasor releases all others. Fleming v. Dane, 298 Mass. 216, 219, 10 N.E.2d 85 (1937); Gold v. Boston Elev. Ry., 244 Mass. 144, 138 N.E. 251 (1923); Muse v. De Vito, 243 Mass. 384, 388, 137 N.E. 730 (1923); Cormier v. Worcester Consolidated Ry., 234 Mass. 193, 196, 125 N.E. 549 (1919); Matheson v. O'Kane, 211 Mass. 91, 93–94, 97 N.E. 638, 39 L.R.A.,N.S., 475 (1912); Brewer v. Casey, 196 Mass. 384, 389, 82 N.E. 45 (1907); Pickwick v. McCauliff, 193 Mass. 70, 75, 78 N.E. 730 (1906); Aldrich v. Parnell, 147 Mass. 409, 18 N.E. 170 (1888); Leddy v. Barney, 139 Mass. 394, 397, 2 N.E. 107 (1885); Goss v. Ellison, 136 Mass. 503 (1884); Stone

v. Dickinson, 89 Mass., 7 Allen 26, 28 (1863); Stone v. Dickinson, 87 Mass., 5 Allen 29–30 (1862); Brown v. City of Cambridge, 85 Mass., 3 Allen 474, 476 (1862). That rule apparently was based upon the view that the liability of joint wrongdoers is indivisible and is destroyed by the discharge of any one of them. Selby v. Kuhns, 345 Mass. 600 (1963), at page 605, 188 N.E.2d 861 at page 864, on that point has this to say:

"The rule of unity of discharge of tortfeasors developed in cases where there had been a release of one wrongdoer. It was originally based in the mistaken view that, as in early cases of joint trespass, there was but a single cause of action. Brown v. City of Cambridge, 3 Allen, 474, 476 (concurrent torts, citing Cocke v. Jennor, Hob. 66 and Co. Litt. 232 a). Stone v. Dickinson, 5 Allen 29, S.C., 7 Allen 26, (a single arrest under several writs; 'a single substantive cause of action'; a release under seal showed full satisfaction). Accord (cases of multiple liability for a single wrongful act), Leddy v. Barney, 139 Mass. 394, 2 N.E. 107; Brewer v. Casey, 196 Mass. 384, 82 N.E. 45; Gold v. Boston Elev. Ry., 244 Mass. 144, 147, 138 N.E. 251.

"The inapplicability of the old rule to independent torts united only in their effect led to mention in later cases that there was only one injury and to the statement that 'the damages sustained are * * * inseparable.' Muse v. De Vito, 243 Mass. 384, 388–389, 137 N.E. 730, 731. Some references to a single cause of action intend, we think, to refer to this merger of separate causes in their effect. See Purchase v. Seelye, 231 Mass. 434, 436, 121 N.E. 413, 8 A.L.R. 503."

The Massachusetts Court has recognized the distinction between a release and a covenant not to sue. Lyons v. Durocher, 341 Mass. 382, 383–384, 169 N.E.2d 911 (1960), Karcher v. Burbank, 303 Mass. 303, 311, 21 N.E.2d 542, 124

---

1. Mass.Gen.Laws ch. 231B, § 4, became effective Jan. 1, 1963.

A.L.R. 1292 (1939), Matheson v. O'Kane, supra.

The giving of a covenant not to sue to one joint tort-feasor does not discharge the liability of the other joint tort-feasors. Lyons v. Durocher, supra; Daniels v. Celeste, 303 Mass. 148, 152, 21 N.E.2d 1, 128 A.L.R. 682 (1939); O'Neil v. National Oil Co., 231 Mass. 20, 120 N.E. 107 (1918); Johnson v. Von Scholley, 218 Mass. 454, 457, 106 N.E. 17 (1914); Matheson v. O'Kane, supra.

The case at bar is one not where the release is *absolute and unconditional,* or where the instrument given by the plaintiffs is a *mere* agreement not to sue. Here, the instrument, although in form a release, discloses the intention, though doubtless it could have been more artfully expressed, to preserve the liability of Ford. Certain parts of the release pertinent to that issue, after setting forth recitals acknowledging receipt of $12,-500.00 paid by Metallurgy and Folgo, are as follows:

"And for the consideration * * * we * * * covenant and agree to indemnify and hold forever harmless [Metallurgy and Folgo] * * * against any and all claims, demands and actions whatever which * * * may be made * * * against [Metallurgy and Folgo] * * * on account of the said injury, loss and damage including any claim for contribution or indemnity made against [Metallurgy and Folgo] * * * by FORD MOTOR COMPANY or by any other person, firm or corporation whatsoever.

"It is understood and agreed that this release shall reduce to the extent of the * * * pro rata shares of [Metallurgy and Folgo] * * * any damages recoverable by us or either of us against [Metallurgy and Folgo] * * * by reason of the said injuries alleged * * * and to that end in further consideration of the * * * payment to us, we do hereby release * * * and discharge [Metallurgy and Folgo] and any and all other persons, firms or corporations * * * of and from any and all actions, causes of action, claims and demands for, upon or by reason of the respective pro rata shares caused by or attributable to [Metallurgy and Folgo] * * of any loss, damage or expense suffered by us * * *.

"This release is given under and in compliance with the provisions of R. I. Gen. Laws 1956, SS 10–6–1 to 10–6–11, and all amendments thereof and additions thereto. Acceptance hereof and payment of the consideration * * * shall not be construed as an admission of liability on the part of [Metallurgy and Folgo] * * *."

Rhode Island Gen. Laws § 10–6–7 provides that "A release by the injured person of one (1) joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid." Properly construed, the instrument expresses plaintiffs' intentions (1) to receive the $12,500.00 not as full compensation for their injuries, (2) to receive said sum as the pro rata shares of Metallurgy and Folgo of the full compensation, (3) to discharge Metallurgy and Folgo from additional payments on account of plaintiffs' injuries, and to indemnify them for any claim made by Ford or by others for contribution, (4) to reduce plaintiffs' claim for damages for their injuries by $12,500.00, and (5) not to discharge Ford and others from liability for plaintiffs' injuries.

Counsel has referred the court to no Massachusetts case or case in this Circuit, and the court's research discovers none, where "the rule of unity of discharge of tortfeasors" was applied to an instrument like the one in the instant

case. It is, therefore, incumbent upon the court "to choose the rule which it believes the state court, from all that is known about its methods of reaching decisions, is likely in the future to adopt,"[2] and to apply it to the release in this case. In Matheson v. O'Kane, supra, it was said at pages 95–96, 97 N.E. at pages 639–640:

> "The confusion and apparent conflict of authorities has not arisen in cases like that at bar, where the agreement given to one of the joint wrongdoers is clearly an agreement not to sue and nothing more. * * * The controversy concerns rather the construction of a particular writing as a release or as a covenant not to sue, and the means whereby the two are to be distinguished. * * * [W]here it is evident that the consideration paid to the plaintiff was not intended to be full compensation for his injuries, and the agreement signed by him although in form a release was clearly intended to preserve the liability of those who were not parties to it, many of the courts have sought to give effect to that intention by construing the agreement as in legal effect a covenant not to sue and not a technical release. As stated by A. L. Smith, L. J., in Duck v. Mayeu, [1892] 2 Q.B. 511, 514: 'A rule of construction for such a document was laid down by the Court of Queen's Bench in Price v. Barker, 4 El. & Bl. 760, at p. 777, where it was held that, in determining whether the document be a release or a covenant not to sue, the intention of the parties was to be carried out, and, if it were clear that the right against a joint debtor was intended to be preserved, inasmuch as such right would not be preserved if the document were held to be a release, the proper construction, where this was sought to be done, was that it was a covenant not to sue, and not a release.' * * *."

The modern American point of view[3] on the subject is said to be the rule in Restatement, Torts § 885(1) (1939):

> "A valid release of one tortfeasor from liability for a harm, given by the injured person, discharges all others liable for the same harm, unless the parties to the release agree that the release shall not discharge the others and, if the release is embodied in a document, unless such agreement appears in the document."

The rule referred to in the foregoing sources gives effect to the intention of the releasor to preserve his rights against those not parties to the instrument when such intention is shown in the instrument itself. This result is more readily reached, perhaps, when the consideration paid was not intended to be full compensation for his injuries. Such a rule creates no new cause of action heretofore unknown to the jurisprudence of the Commonwealth, nor does it introduce either a procedural innovation or a judicial remedy of novel character or dimension. The Massachusetts Court, cognizant of the trend toward the rule, pointed out in Selby v. Kuhns, supra, that "Dissatisfaction elsewhere with the rule of unity of discharge has led to statutory modifications, to recognition of oral agreements accompanying settlements, *and to liberal construction of releases as covenants not to sue.* * * * It may reasonably be thought to have led to the enactment of St. 1962, c. 730, * * * § 1[4] * * *." (Emphasis supplied.)

In consideration of the foregoing, and as an alternative to holding that the release must be construed as matter of law to bar the plaintiffs from maintaining the action against Ford, I incline to the view that the Massachusetts Court in all likelihood will in circumstances similar to the instant case adopt and apply the rule touched upon in *Matheson* and found in the Restatement and Mass. Gen. Laws ch. 231B, § 4, and, accord-

---

2. Wright, Federal Courts, 206 (1963). See Pomerantz v. Clark, 101 F.Supp. 341, 346 (D.Mass.1951).

3. See Restatement, Torts § 885(1), comment *b* at 462 (1939).

4. Mass.Gen.Laws ch. 231B, § 4 (1963).

ingly, I apply that rule in this case. It is ordered, therefore, that the motion for summary judgment be and hereby is denied.

It should be pointed out in this connection that the defendant is not foreclosed from attacking and impeaching the verity of the recitals in the instrument to which it is neither party nor privy. It will not be precluded from showing by evidence at the trial that the plaintiffs did in fact accept the $12,500.00 in full compensation for all their injuries and in full discharge of all their claims, O'Neil v. National Oil Co., supra at 20, 28, 120 N.E. 107, and that the instrument is in fact a release of the defendant from all liability to the plaintiffs.