915 So.2d 698 (2005)
The STATE of Florida, Appellant,
v.
Elkins GOMEZ, Appellee.
No. 3D04-2853.
District Court of Appeal of Florida, Third District.
November 23, 2005.
*699 Charles J. Crist, Jr., Attorney General, and Richard L. Polin, Assistant Attorney General; Katherine Fernandez Rundle, State Attorney, and Angelica D. Zayas, Assistant State Attorney, for appellant.
Bennett H. Brummer, Public Defender, and Thomas Regnier, Assistant Public Defender, for appellee.
Before RAMIREZ, SUAREZ, and CORTIÑAS, JJ.
CORTIÑAS, Judge.
The State of Florida ("State") appeals an order of the trial court dismissing all criminal charges under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) against the defendant, Elkins Gomez.
This case arose out of a physical altercation between the defendant and another individual, Kevin Lopez ("Lopez"), after they were involved in a traffic accident. The accident was observed by two police officers who happened to be near the scene. After the accident, the defendant and Lopez stepped out of their respective vehicles and onto the roadway, where they began to argue. The police officers temporarily separated the defendant and Lopez, and another officer, Cruz, also arrived at the scene. While Cruz was being briefed by one of the officers, Lopez punched the defendant in the face and the two began to fight. One of the officers described the situation as follows:
It is important to understand the type of aggression that Mr. Gomez and Mr. Lopez were exhibiting. There is active physical aggression of resistance on the part of both subjects, hitting each other, actively striking each other and this is going on between both subjects. So, there is a potential for physical injuries here.
Police officers attempted to restrain and arrest both individuals. While Lopez was physically restrained by his friends at the scene, the defendant engaged in a physical struggle with two of the officers and kicked the third officer in the knee, causing the officer to stumble backwards. One of the officers testified that the defendant "was by far the most aggressive person at the scene." Eventually, the three officers were able to subdue and arrest the defendant.
Officer Cruz handcuffed the defendant and transported him to the police station. Cruz testified that, on the way to the station, the defendant was purposely banging his head against the metal partition separating the front and back seats of the patrol car. The defendant was transported to Jackson Memorial Hospital's Ward D (the prison ward of the hospital) for medical treatment. After his wounds were treated, a booking photo of the defendant was taken. The trial court stated that the booking photo showed a small laceration but no blood. Officer Cruz testified that the booking photo accurately reflected the defendant's appearance at the time of his arrest.
The defendant was charged with two counts of battery on a law enforcement officer and resisting arrest with violence. After the trial had commenced, Officer Cruz informed the State that he believed that pictures of the defendant had been taken at the police station, prior to his being transported to Ward D. The State promptly informed the trial court, which inquired into the matter. During the trial court's inquiry, Officer Cruz testified that *700 he personally observed such photographs being taken. The defendant's attorney claimed that the State's failure to provide the photographs in discovery constituted a Brady violation,[1] and requested that the charges be dismissed. The trial court declared a mistrial to allow for further discovery concerning the photographs.
The City of Miami Beach's records custodian at the time of the incident testified that, despite searching in all relevant files, the only photograph of the defendant that existed was his booking photo. There was no record of any other film or photographs in this case.
The defendant then filed a motion to dismiss the criminal charges against him on the ground that the State's failure to produce the photographs constituted a due process violation. The trial court characterized the additional photographs as "highly exculpatory" and, as such, found that the defendant's due process rights were violated by the State's failure to produce this evidence. The trial court granted the motion and dismissed all criminal charges in this case. The State appeals the trial court's order.
"The dismissal of a [criminal] charge is the most severe sanction a court can impose for the destruction of evidence; it is to be used with the greatest caution and deliberation." State v. Thomas, 826 So.2d 1048, 1049 (Fla. 2d DCA 2002) (citing State v. Westerman, 688 So.2d 979 (Fla. 2d DCA 1997)). The Supreme Court has recognized that, when dealing with potentially exculpatory or useful evidence that is permanently lost, "courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." California v. Trombetta, 467 U.S. 479, 486-87, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) (citing U.S. v. Valenzuela-Bernal, 458 U.S. 858, 870, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982)). In addressing the government's constitutional duties to preserve evidence, the Court stated:
Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality. . . evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.
Id. at 488-89, 104 S.Ct. 2528 (citing U.S. v. Agurs, 427 U.S. 97, 109-110, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). However, in cases where the destroyed evidence is determined to have been potentially useful, as opposed to materially exculpatory evidence, a due process violation requires a showing of bad faith on the part of the State. Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).
Despite the uncertainty surrounding the existence of the evidence, the trial court concluded not only that the photographs, in fact, existed, but that they depicted blood dripping from the defendant's face and that this "highly exculpatory" evidence was not produced by the State to the defendant in violation of Brady. While we accept the trial court's findings of fact, we disagree with its legal determinations.
*701 We conclude that such evidence properly falls within the category of potentially useful evidence as opposed to material exculpatory evidence. Given the facts in this case, the existence of additional photographs showing physical injury to defendant's face does not possess apparent exculpatory value. See Trombetta, 467 U.S. at 486-87, 104 S.Ct. 2528. Certainly, physical injury to the defendant's face is consistent with the fact that Lopez punched the defendant in the face and does not exculpate the defendant of the crimes of battery on a law enforcement officer and resisting arrest with violence. Moreover, physical injury to the defendant's face is also consistent with Cruz' testimony that the defendant purposely banged his head on the patrol car's metal partition. While we do not deny that such photographs, assuming they existed, would have been potentially useful to the defense, they do not constitute material exculpatory evidence as a matter of law. See State v. Muro, 909 So.2d 448, 455-56 (Fla. 4th DCA 2005); Felder v. State, 873 So.2d 1282, 1283 (Fla. 4th DCA 2004).
We also find that the defendant did not meet his burden of showing that he would be unable to obtain comparable evidence by other reasonably available means. See Trombetta, 467 U.S. at 490, 104 S.Ct. 2528. There is no record evidence that the defendant attempted to obtain the medical report(s) associated with the defendant's admission to the Hospital's Ward D. Such medical report(s) would have described the defendant's facial injuries and served as comparable evidence to the non-existent photographs. In addition, Officer Cruz testified that the booking photograph accurately depicted the defendant's facial injuries, thereby rendering the booking photograph as comparable evidence.
Because we are dealing with potentially useful evidence, its loss or destruction constitutes a due process violation only upon a showing of bad faith on the part of the police or prosecution. Youngblood, 488 U.S. at 58, 109 S.Ct. 333. "Under Youngblood, bad faith exists only when police intentionally destroy evidence they believe would exonerate a defendant." Williams v. State, 891 So.2d 621, 622 (Fla. 3d DCA 2005). Without a showing of bad faith on the part of the police or prosecution, the failure to preserve potentially useful evidence does not constitute a denial of due process. Youngblood, 488 U.S. 51, 109 S.Ct. 333; Williams, 891 So.2d 621. Since the record in this case is devoid of any evidence of bad faith, there is no violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.
Accordingly, we reverse the dismissal of the charges against the defendant and remand the case to the trial court for further proceedings consistent with our holding.
Reversed and remanded.
RAMIREZ, J., concurs.
SUAREZ, J. (dissenting).
I respectfully dissent. I would affirm for two basic reasons. The trial court's factual findings are entitled to deference, and the trial court's legal conclusions are sound. First, this Court is obligated to accept the trial court's findings of fact so long as they are supported by competent substantial evidence. Lightbourne v. State, 841 So.2d 431 (Fla.2003). The trial court received live testimony and, unlike this Court, was in a position to weigh, first hand, the credibility of witnesses. Following the hearing, the trial court found that police indeed had taken a photograph of the Defendant when he arrived at the police station and that it depicted his bloody and injured face before he received medical treatment. These factual findings are *702 supported by competent substantial evidence and this Court must accord them deference. Way v. State, 760 So.2d 903 (Fla.2000) (holding that the trial court's finding that evidence was not disclosed is a factual finding that must be upheld if supported by competent substantial evidence).
The trial court's legal conclusions are also sound. The majority applies Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), which requires a defendant who was deprived of potentially useful information to demonstrate bad faith on the part of the State. With all respect, I believe that Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), provides the correct analysis in this case. Unlike potentially useful evidence under Youngblood that would require further testing or study to reveal its exculpatory value, the photograph in the instant case would have spoken for itself. Pursuant to Brady, "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of the prosecution." Brady, 373 U.S. at 87, 83 S.Ct. 1194. Impeachment evidence and exculpatory evidence both fall within the Brady rule. United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).
In my view, photographs of the Defendant's injured and bloodied face taken upon his arrival at the police station, just after his arrest and prior to his injuries being medically treated, are plainly material to whether he resisted arrest or whether he defended himself against officers' use of excessive force. According to the Defendant and his witnesses, after the police tackled him and held him prone on the ground, they struck his head against the concrete ground and punched him, and placed him in handcuffs. The police deny taking any such action. The picture would have graphically illustrated to a jury the severity of the Defendant's wounds, and would have impeached the testimony of a key state witness, the police officer who the Defendant allegedly kicked, who testified that the incident as alleged by the Defendant did not take place and that he did not see blood on the Defendant's face at the scene as claimed by the Defendant and the Defendant's witnesses. Another officer testified that he noticed that the Defendant's face was bloody immediately after the Defendant was handcuffed before he placed him in the police car. When pressed by the trial judge about the cause of the Defendant's injuries, the officer testified that the Defendant could have exacerbated them by banging his head against the police car partition  an assertion that the trial court found to be "unlikely." Clearly, the trial court seriously doubted the veracity of the officers' testimony. The photograph's existence, and disappearance, led the trial court to doubt the arresting officers' credibility. The photograph is material because it likely would have had a similar effect on the jury. Way, 760 So.2d at 903 (holding that photographs were exculpatory where they could have been used to impeach state witnesses and might have supported an alternate theory of defense); State v. Huggins, 788 So.2d 238 (Fla.2001) (holding that a statement was favorable to the defense because it could have impeached a key state witness on a key issue, and undermined the witness' credibility).
Furthermore, I disagree with the Majority's conclusion that there is an adequate substitute for the missing picture. The booking photographs that were taken after the Defendant was treated for his injuries depicted a small cleaned laceration and no blood. The trial court apparently disbelieved Officer Cruz's testimony that the Defendant looked the same in the booking *703 photograph and the missing photograph. Indeed, Cruz had testified earlier that the Defendant was bloody on the scene when he was handcuffed and when he was brought to the station. Defense witnesses also reported seeing the Defendant dripping with blood when he was handcuffed and placed in the police car. The sanitized booking photograph is simply not a satisfactory substitute for a photograph of the Defendant's untreated and bloody wounds. Likewise, any medical description of the Defendant's injuries and treatment would fail to convey the same information as the missing photograph taken after his arrest and before his wounds were treated.[2]
Therefore, I would affirm the trial court's order dismissing the charges against the Defendant.
NOTES
[1] A Brady violation occurs when exculpatory or impeaching evidence, which is material to guilt or punishment, is inadvertently or willfully suppressed by the State and causes prejudice to the defendant, thereby depriving the defendant of due process. Brady, 373 U.S. at 87, 83 S.Ct. 1194.
[2] A picture is worth a thousand words, particularly to a jury.