LOGUE, J.
Jorge Yero appeals his conviction of third-degree grand theft, arguing the trial court erred in denying his motion to dismiss the information. At trial, the State relied on the testimony of three witnesses who described Yero’s actions as they appeared in a surveillance video. The video itself, however, was not played for the jury because it had been destroyed. Yero argues the State’s failure to preserve the surveillance video warrants a reversal. We disagree and affirm.
FACTS AND PROCEDURAL BACKGROUND
In an amended information, the State charged Yero with third-degree grand theft stemming from the theft of a woman’s wallet in a restaurant. Yero moved to dismiss the charge prior to trial. He alleged that the State’s failure to retrieve and preserve the restaurant’s surveillance video prevented him from preparing an adequate defense and deprived him of his right to confront the witnesses against him under the Sixth Amendment of the United States Constitution. The State filed a response alleging that an officer attempted to retrieve the video on several occasions, but was unsuccessful due to the inadvertent overwrite of the footage by the restaurant’s security system.
Without holding an evidentiary hearing, the trial court denied the motion to dismiss after concluding that the State did not act in bad faith. Defense counsel renewed the motion at the close of trial. He did not, however, move to exclude testimony describing the content of the video prior to trial or object to the admission of such testimony at trial.
The testimony presented at trial reflected the victim, Katherine Ashurst, was on vacation in Islamorada, Florida with her flaneé, Nigel Jackson. On the evening that the crime occurred, at around 2:00 a.m., they visited a restaurant where they sat down at the far end of the bar. Ash-urst hung her purse over the back of her chair. The purse contained a wallet of the type that does not fold and is long enough to hold a checkbook, sometimes referred to as a woman’s clutch or checkbook wallet. Within the wallet was $2,500 in cash and several credit cards.
Ashurst and Jackson were approached by only one patron that night, Yero. At one point, Yero stood between the couple’s chairs by Ashurst’s purse. He later excused himself for a few minutes before returning to buy the couple drinks, pay his bar tab, and leave. Ashurst noticed that her wallet was missing approximately five minutes after Yero left the bar, which was around 3:00 a.m.
The Sheriffs office was called and a deputy sheriff arrived on the scene shortly thereafter. After learning that the restaurant had surveillance video cameras, Ash-urst, Jackson, and the deputy viewed the video footage from that evening. At trial, *1182 they testified to the contents of the video. The video indicated that Yero did not at first have a bulge in his left pocket, but that, after he had positioned himself between Ashurst and Jackson with his arm near Ashurst’s purse, he had a bulge in his left pocket matching the size and shape of Ashurst’s wallet. The video also showed that Yero went outside the bar and then returned. When Yero returned to the bar, the object was no longer in his pocket. The area around the bar was searched, but the wallet was never found.
The video was not played at trial because it had been overwritten by the restaurant’s security system. The deputy described his efforts to preserve the video recording. He requested the video on the same night of the incident, but a bar manager informed him that “he wasn’t able to do it at the time, that he would have one of the managers or IT get to it.” The deputy was not informed that the recording would be automatically overwritten within five days. By the time the deputy followed up on his request approximately nine days later, he was told that the recording had been overwritten. He attempted to retrieve the video recording on another occasion, but he was again informed that the recording had been overwritten.
The jury found Yero guilty of third-degree grand theft. The trial court sentenced him to ten years as a habitual offender. This appeal followed.
ANALYSIS
Yero contends that the State’s reliance on testimony regarding the contents of the destroyed surveillance video violated his rights to due process under the Fourteenth Amendment and to confront witnesses under the Sixth Amendment of the United States Constitution. He also maintains that the evidence should have been excluded. We will address each issue in turn.
I. Due Process
A body of law has developed which discusses when the State’s failure to preserve evidence rises to the level of a violation of due process. This analysis requires a court to “first consider whether the missing evidence was ‘materially exculpatory’ or only ‘potentially useful.’ ” State v. Bennett, 111 So.3d 943, 944 (Fla. 2d DCA 2013) (reversing the dismissal of a case because the State did not act in bad faith by failing to preserve potentially useful evidence to the defendant, a surveillance video of the defendant’s altercation with victims).
On the one hand, if the evidence is materially exculpatory, the State has a duty to preserve it and the failure to do so constitutes a due process violation. California v. Trombetta, 467 U.S. 479, 488,104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); Bennett, 111 So.3d at 944. But to meet this standard of constitutional materiality, the evidence must possess an exculpatory value that was apparent before its destruction and the defendant must be unable to obtain comparable evidence by other reasonably available means. Trombetta, 467 U.S. at 489, 104 S.Ct. 2528. A due process violation in this context does not turn on whether the State acted in bad faith. See Illinois v. Fisher, 540 U.S. 544, 549, 124 S.Ct. 1200, 157 L.Ed.2d 1060 (2004) (holding, in the context of destroyed evidence, that a defendant’s burden to show bad faith on the part of the State depends on whether the evidence was “material exculpatory” or “potentially useful”).
On the other hand, the State’s failure to preserve evidence that is only “potentially useful” to a defendant does not constitute a due process violation unless the defendant can show bad faith on the part of the State. Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); Guzman v. State, 868 So.2d *1183 498, 509 (Fla.2003); State v. Gomez, 915 So.2d 698, 700 (Fla. 3d DCA 2005). “In the context of destroyed evidence, ... bad faith [is] ‘a flagrant and deliberate act done ... with the intention of prejudicing the defense.’ ” Bennett, 111 So.3d at 945 (quoting State v. Powers, 555 So.2d 888, 890 (Fla. 2d DCA 1990)).
Yero fails to meet the requirements to prove a due process violation. Yero did not argue below that the video was exculpatory, and he conceded in his initial brief and at oral argument that this case does not involve exculpatory evidence. In any event, the testimony of Ashurst, Jackson, and the deputy indicated that the contents of the video were inculpatory and incriminating, not exculpatory.[1]
Yero also failed to allege, and the trial court did not find, bad faith on the part of the State. The deputy requested a copy of the video recording on the night of the incident and was assured that it would be made available; when the deputy requested the video on the night of the incident, he was not informed that the recording would be automatically overwritten by new footage within five days; the deputy followed up on his request on more than one occasion; and the deputy testified that the video depicted Yero in possession of an item that matched the physical description of Ashurst’s wallet (thus, the deputy viewed the evidence as having inculpatory value).
In State v. Hampton, 113 So.3d 109, 110 (Fla. 5th DCA 2013), the Fifth District held that similar conduct did not constitute bad faith. There, the State failed to retrieve and preserve a surveillance video from the retail store where the defendant had been arrested. Id. at 109. “[T]he sheriffs office had requested a copy of the videotape at the time of [the defendant’s] arrest and the store was to make it available.” Id. at 110. When the arresting deputy returned to the store to retrieve the surveillance video on more than one occasion, however, “he was told that there was no tape and any tape would have been erased within 24 hours.” Id. The defendant moved to dismiss the case as a result of the State’s failure to preserve the evidence, and the trial court granted the motion. Id. The Fifth District reversed pursuant to Youngblood, holding that the defendant failed to show bad faith on the part of the State. Id. Similarly, we hold that Youngblood’s bad-faith requirement controls in this case and that the record does not reflect a “flagrant and deliberate act done with the intention of prejudicing the defense.”
Yero argues that Youngblood’s bad-faith requirement should not apply to evidence central to the State’s case. The Supreme Court expressly rejected this argument: “the applicability of the bad-faith requirement in Youngblood depended not on the centrality of the contested evidence to the prosecution’s case or the defendant’s defense, but on the distinction between ‘material exculpatory’ evidence and ‘potentially useful’ evidence.” Fisher, 540 U.S. at 549, 124 S.Ct. 1200 (reversing the dismissal of drug possession charges where the State in good faith destroyed the alleged cocaine before the defendant’s expert tested it). Thus, no due process violation occurred.
*1184 II. The Sixth Amendment Right to Confrontation
We also reject the notion that the State’s failure to preserve the surveillance video violated Yero’s right to confrontation under the Sixth Amendment of the United States Constitution, because the right does not encompass physical evidence.
Yero directs this court to the case of Johnson v. State, 249 So.2d 470, 472 (Fla. 3d DCA 1971), which held it was reversible error to permit a ballistics expert to testify as to markings on a bullet that corresponded to markings on a pistol where the State could not produce the bullet for examination by the defendant’s own expert. In so reasoning, this court stated: “[w]e think that appellant’s right to examine tangible evidence is a part of his right to the confrontation of witnesses against him and the right to a full and complete cross-examination of the witnesses who are to be presented against him.” Id.
The authority of Johnson as precedent has been undermined over the decades. Whether the State’s failure to preserve evidence violates a defendant’s constitutional rights is an issue that arises under the Due Process Clause, not the Confrontation Clause. To the extent Johnson suggests otherwise, its reasoning has been soundly rejected by this court and other courts.
In Harrison v. State, 403 So.2d 565, 566 (Fla. 3d DCA 1981), for example, this court affirmed the trial court’s finding that the defendant violated his probation by possessing brass knuckles, where the State relied on testimony from an officer that led to the introduction of a photograph rather than the actual knuckles into evidence. After noting “the officer who discovered the knuckles testified at the probation revocation hearing and was subject to cross-examination,” this court went on to hold that a defendant’s “right to confrontation under the Sixth Amendment of the United States Constitution is restricted to witnesses and does not encompass physical evidence.” Id. (citing United States v. Herndon, 536 F.2d 1027, 1029 (5th Cir.1976)). Likewise, in this case, the witnesses who testified concerning the content of the surveillance video were subject to cross-examination at trial. This satisfied Yero’s right to confrontation under the Sixth Amendment.
Moreover, as discussed above, subsequent decisions by the United States and Florida Supreme Courts have established that the issue raised' by the State’s failure to preserve evidence must be addressed under the Due Process Clause in the manner discussed above. See Trombetta, 467 U.S. at 481, 104 S.Ct. 2528; Youngblood, 488 U.S. at 52, 109 S.Ct. 333; Guzman, 868 So.2d at 509; see also State v. Farr, 558 So.2d 437, 438 (Fla. 4th DCA 1990) (“Although the confrontation clause of the Sixth Amendment refers to witnesses and does not encompass physical evidence, federal decisions hold that the due process clause of the Fifth Amendment and fundamental fairness entitles a defendant access to relevant and material evidence which is necessary to his defense.”) (internal citations omitted). It is the analysis under those cases which is controlling.
III. Section 90.954(1), Florida Statutes
Finally, Yero maintains that the trial court erred in failing to exclude the testimony describing the content of the video. This claimed error, however, was unpreserved by a specific objection. See Corona v. State, 64 So.3d 1232, 1242 (Fla.2011). In any event, the testimony was admissible under section 90.954(1), Florida Statutes (2012).
The best evidence rule states “[ejxcept as otherwise provided by statute, an original writing, recording, or photograph is *1185 required in order to prove the contents of the writing, recording, or photograph.” § 90.952, Fla. Stat. (2012). An exception to this rule provides that “[t]he original of a writing, recording, or photograph is not required ... and other evidence of its contents is admissible when ... [a]ll originals are lost or destroyed, unless the proponent lost or destroyed them in bad faith.” § 90.954(1), Fla. Stat. This exception recognizes “[t]he need for relevant evidence trumps the dangers of inaccuracy and fraud—issues left to the trier in assessing probative force .... ” US. ex rel. El-Amin v. George Washington Univ., 522 F.Supp.2d 135,147 (D.D.C.2007) (quoting 6 Weinstein’s Federal Evidence § 1004.20). It also reflects an ancillary purpose of protecting against the possible inference that the failure to preserve evidence stems from design. 2 McCormick On Evidence § 237 (7th ed.).
Casebooks are replete with prosecutions based upon the testimony of the contents of writings or recordings that are unavailable. In England v. State, 940 So.2d 389, 401 (Fla.2006), for example, the Florida Supreme Court upheld a conviction of first-degree murder based in part upon the contents of a destroyed letter. In doing so, the Court noted there was “no evidence or assertion that the State, the proponent of the destroyed writing, lost or destroyed the letter in bad faith.” Id. Indeed, in a case whose facts are remarkably similar to this case, an appellate court in New Mexico held that the testimony of two officers describing the contents of a destroyed surveillance video properly provided the basis for an adjudication of delinquency. State v. Timothy P., No. 32, 130, 2013 WL 6662708 (N.M.Ct.App. Nov. 21, 2013).
CONCLUSION
Because the surveillance video was not exculpatory and because the State did not act in bad faith when it failed to preserve it, the trial court properly denied the motion to dismiss the information.
Affirmed.

. The Second District has recognized that "the law is somewhat unsettled as to which side bears the burden of establishing whether the destroyed evidence is materially exculpatory or potentially useful.” Bennett, 111 So.3d at 945 (citing Bennett v. State, 23 So.3d 782, 792-94 (Fla. 2d DCA 2009)). We do not reach the issue of whether Yero had the burden to show that the destroyed evidence was materially exculpatory under the facts of this case. Even if we were to assume that the State had the burden, the State met' that burden based on the testimony of the three witnesses.