COMMONWEALTH vs. JOSEPH V. LENESKI.

No. 04-P-1645.

Essex. December 12, 2005. - May 15, 2006.

Present: GELINAS, KAFKER, & MILLS, JJ.

*Evidence,* Photograph, Videotape, Digital image, Best and secondary, Relevancy and materiality. *Practice, Criminal,* Judicial discretion, Instructions to jury.

At the trial of a criminal complaint charging larceny of property valued at over $250, the judge did not abuse his discretion in admitting in evidence a compact disc (CD) of digitally recorded surveillance of a convenience store in which the defendant was working, where the convenience store owner properly authenticated the digital images placed and stored in a computer hard drive and transferred to the CD in question [294-295], and where its prejudicial effect did not outweigh its probative value [296]; moreover, there was no merit to the defendant's argument, raised for the first time on appeal, regarding the judge's failure, sua sponte, to give a limiting instruction regarding the CD due to its alleged incompleteness [295-296].

COMPLAINT received and sworn to in the Newburyport Division of the District Court Department on January 13, 2003.

The case was tried before *Robert A. Brennan,* J.

*Geoffrey DuBosque* for the defendant.

*Marcia H. Slingerland,* Assistant District Attorney, for the Commonwealth.

GELINAS, J. Joseph V. Leneski appeals from his conviction for larceny of property valued at over $250. On appeal, he claims (1) that the trial judge abused his discretion in admitting a "video CD" (compact disc or CD) of digitally recorded surveillance of a convenience store in which the defendant was working; (2) that the trial judge committed error in failing to give, sua sponte, a "limiting" instruction; and (3) that the CD should not have been admitted as its probative value was outweighed by its prejudicial effect.

*Facts.* Charles Mabardy, the owner of the Salisbury Mini-Mart (store) in Salisbury, testified that on November 7, 2002, he went to the store and reviewed images produced by surveillance cameras monitoring his store on the night and early morning hours of November 6 and 7, 2002. The defendant, who had worked at the store for roughly one year, typically worked the third shift, from 10:00 P.M. to 6:00 A.M. and always did so alone. In viewing images from 5:00 A.M. to 6:00 A.M., Mabardy observed the defendant "grabbing [lottery scratch] tickets out of the area where the tickets are." He pulled "[o]ver 20; 10 or 20" lottery scratch tickets, "[r]ight hand, left hand, one over the other." Further review of the surveillance system images revealed that no one else was in the store at the time. The defendant then disappeared from the camera's view, and the power went off. The only power outage in the store was to the "recording devices" and cameras.

Mabardy testified that two days prior to the incident he had installed a new surveillance system that consisted of motion sensitive cameras that connected to his computer; the cameras were activated by motion in the store, and the images they captured were recorded on the computer's "hard drive."[1] The images thus captured could be viewed on the computer, or transferred to a compact disc for viewing on another computer or by means of a video player.[2] Mabardy testified that he had viewed the video images of the defendant on his computer, that he had transferred the pertinent portions of the images to a CD, and that he had reviewed the CD and recognized it as "a fair and accurate representation of the film that [he] viewed of the

---

[1]Mabardy testified: "It's actually a computer, so it's all on hard drive. It was a DVR, what they call a digital video recorder so it doesn't actually — the old system before I changed it would do tapes and you'd have to change the tape on a daily basis. . . . This particular system which I just changed two days before, has this where it's burned onto the hard drive. It saves it for like eight weeks, but you can actually just take the mouse and drop it on top of the CD and it burns it right on the CD so you can give it to the police. . . . That's the procedure that went through for that, absolutely."

[2]A compact disc is "a small optical disk usu[ally] containing recorded music or computer data." Merriam Webster's Collegiate Dictionary 198, 252 (11th ed. 2004). A digital video disc (DVD) is "an optical disk . . . containing . . . a video recording . . . or computer data." *Id.* at 389. As the parties refer to the DVD here as a CD, we shall retain their nomenclature.

store premises the night that [the defendant] worked starting on the 6th and ending on the 7th."

The defendant objected to the introduction of the CD, arguing that he understood there had been a videotape, not a CD, and that the CD had been "manufactured." The judge overruled the objection, stating that, "If it's a copy just like any other video tape the fact that it's in DVD or CD form as opposed to VHS form" made no difference. The CD was admitted into evidence, and was later played for the jury.

At trial, the defendant contended that he had removed twenty ten-dollar lottery scratch tickets at the request of a customer, but that the sale was ultimately not made. He testified that on the night in question, someone came in and said, "give me ten of one and ten of two," meaning, inferentially, ten ten-dollar lottery scratch tickets from dispenser number one and ten ten-dollar lottery scratch tickets from dispenser number two. The customer "hollered out the tickets" without stopping while on the way to the Dunkin' Donuts counter in another part of the store. The defendant testified that the customer also went to the automated teller machine, which "wouldn't take his credit card." The defendant further testified that the customer then went to another cash register that was not shown on the surveillance system and said that he would come back later. The defendant "put [the lottery scratch tickets] back in when the guy didn't buy them" and that was why his "numbers c[a]me out right."[3] The defendant also testified that he was not in the store at "18:55," the time displayed on the CD when it depicted the defendant removing the lottery scratch tickets, but that there was "no question" in his mind that he was shown on the CD

---

[3]Mabardy testified that he examined the defendant's "shift sheet," on which employees were required to enter what scratch tickets had been sold during their shifts. The defendant's sheet showed that he had sold "zero" tickets of the particular ten-dollar game that the CD showed him taking. In addition, Mabardy testified that he examined the shift sheet of "Dee," the person who worked the shift before that of the defendant, and determined that the numbers she had provided concerning the number of tickets she sold had been altered to reflect that the missing tickets had been sold during her shift. However, her receipts from her shift's sales matched the number of tickets she entered as having sold, prior to the sheet being altered. The defendant had access to Dee's shift sheet. In all, the numbers for five scratch ticket games had been altered on Dee's sheet, thereby hiding $1,400 or 320 tickets that were missing.

that was played to the jury. He also claimed to know nothing of a power failure that night, but acknowledged knowing where the circuit breakers were, and that if he tripped one of them, something would happen, depending on which one was tripped.

The defendant's principal argument on appeal is that the trial judge abused his discretion in admitting the CD in evidence, contending that, as he argued at trial, it was untrustworthy and incomplete. He also claims, for the first time on appeal, that the judge committed error in not giving, sua sponte, a limiting instruction, and that the CD's probative value was outweighed by its prejudicial effect.

*Discussion.* Admissibility of evidence "is largely committed to the discretion of the trial judge." *Henderson* v. *D'Annolfo,* 15 Mass. App. Ct. 413, 429 (1983), citing *Commonwealth* v. *Noxon,* 319 Mass. 495, 536-537 (1946) (admission of photographs in evidence rests largely in discretion of trial judge and whether photographs are sufficiently verified is preliminary question of fact to be decided by him).

Our courts have held that videotapes are "on balance, a reliable evidentiary resource," *Commonwealth* v. *Harvey,* 397 Mass. 351, 359 (1986), and that they "should be admissible as evidence if they are relevant, they provide a fair representation of that which they purport to depict, and they are not otherwise barred by an exclusionary rule." *Commonwealth* v. *Mahoney,* 400 Mass. 524, 527 (1987). There are ordinarily no constitutional prohibitions requiring the exclusion of videotapes. See *id.* at 527-528. "It was within the judge's discretion to admit the videotape." *Viveiros's Case,* 53 Mass. App. Ct. 296, 301 (2001).

Videotapes, like photographs, are not subject to the best evidence rule. "The best evidence rule is applicable to only those situations where the contents of a writing are sought to be proved." *Commonwealth* v. *Balukonis,* 357 Mass. 721, 725 (1970), citing *Fauci* v. *Mulready,* 337 Mass. 532, 540-542 (1958). The best evidence rule would not apply to a videotape recorded by a store's security system, and a properly authenticated copy would be admissible if otherwise relevant.

For similar reasons, we hold that digital images placed and stored in a computer hard drive and transferred to a compact disc are subject to the same rules of evidence as videotapes.

In other contexts our courts have deemed that digital images on a hard drive are appropriate evidence even though not specifically provided by statute. See *Perry* v. *Commonwealth*, 438 Mass. 282, 285-286 (2002). As with videotapes, we think that digital image evidence is not subject to the best evidence rule, as such images are not writings, see *Commonwealth* v. *Balukonis, supra.* Further, according to rule 1001(3) of the Proposed Massachusetts Rules of Evidence, the images copied to a CD would be originals, and thus in full compliance with the best evidence rule.[4,5]

Here, the CD was properly authenticated by Mabardy, who viewed the images on the computer and "burned" the CD copy; he testified as to the procedure he used in the surveillance process, the copying process, and to the contents of the CD. This testimony was sufficient to authenticate the CD, and to render it admissible as evidence. Any concerns that the defendant had regarding the surveillance procedures, and the method of storing and reproducing the video material, "were properly the subject of cross-examination and affected the weight, not the admissibility, of the" CD. *Commonwealth* v. *Mahoney*, 400 Mass. at 529-530.

The defendant argues for the first time on appeal that the CD was "incomplete," and that the judge should have given, sua sponte, a limiting instruction to that effect. "A party 'is not permitted to raise an issue before the trial court on a specific ground, and then to present that issue to [the reviewing] court

[4]Rule 1001(3) of the Proposed Massachusetts Rules of Evidence provides:

"An 'original' of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it. An 'original' of a photograph includes the negative or any print therefrom. If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.' "

[5]The Proposed Massachusetts Rules of Evidence "have substantial value as a comparative standard in the continued and historic role of the courts in developing principles of law relating to evidence." *Commonwealth* v. *Pleas*, 49 Mass. App. Ct. 321, 325 (2000), quoting from Supreme Judicial Court, Announcement Concerning the Proposed Massachusetts Rules of Evidence (Dec. 30, 1982).

on a different ground.' " *Commonwealth* v. *Lauzier*, 53 Mass. App. Ct. 626, 633 (2002), quoting from *Commonwealth* v. *Campbell*, 51 Mass. App. Ct. 479, 483 (2001). Even were we to consider the arguments, the defendant would fare no better. Any issue as to the incompleteness of the CD would go to the weight and not the admissibility of the evidence, and nothing has been made to appear in the record of a need for a limiting instruction, even if one had been requested. Contrast *Commonwealth* v. *Austin*, 421 Mass. 357, 364-365 (1995) (judge gave strong limiting instruction where videotape showed defendant committing robbery for which he was not being prosecuted; videotape bore on reliability of identification); *Commonwealth* v. *Harvey*, 397 Mass. at 358-359 (appropriate limiting instruction where videotape used to show victim's state of sobriety).

The defendant further argues that the prejudicial effect of the compact disc outweighed its probative value. "It is within the sound discretion of the trial judge to determine whether the inflammatory nature of the evidence, including photographs and videotapes, outweighs its probative force." *Commonwealth* v. *Cintron*, 435 Mass. 509, 519 (2001) (no error in admitting videotape of defendant's brother beating victim with baseball bat several months before victim was killed). No abuse of discretion has been shown in this case.

*Judgment affirmed.*