NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-107                                        Appeals Court

COMMONWEALTH  vs.  DAVID A. CONNOLLY.

No. 16-P-107.

Middlesex.      December 14, 2016. - May 25, 2017.

Present:  Wolohojian, Milkey, & Shin, JJ.


Assault and Battery.  Evidence, Videotape, Best and secondary,
    Cross-examination, Authentication, Identification,
    Opinion.  Identification.  Witness, Cross-
    examination.  Fair Trial.



    Complaint received and sworn to in the Malden Division of
the District Court Department on August 19, 2014.

    The case was tried before Emily A. Karstetter, J.


    Justin J. Patch for the defendant.
    Alaina Catherine Sullivan, Assistant District Attorney, for
the Commonwealth.


    SHIN, J.  The defendant was convicted of assault and

battery for pushing someone in a hallway of an apartment

building.  While he admitted that contact occurred, his defense

was that it was accidental.  The case therefore turned on the

details of the interactions between the two individuals.  At

trial the Commonwealth presented a single witness -- a police officer who watched a video of surveillance footage[1] that he said was recorded from inside the building.  Before the defense had an opportunity to view the video, it was erased through no fault of the Commonwealth.  Over the defendant's objection, the judge allowed the officer to testify as to his recollections of what he saw on the video, including that, contrary to the theory of the defense, it showed the defendant lifting both arms and "shoving" the victim to the ground.

We consider in this appeal (1) whether the requirement of authentication pertaining to real evidence applies to the lost video, and (2) whether, and in what circumstances, a judge can admit a witness's lay opinion identifying a person on a video, where the video is not available for the jury to view.  With respect to the first question, we conclude that, before the officer's testimony could be admitted, the Commonwealth had to lay a foundation establishing that the lost video was what the officer claimed it to be, i.e., a genuine recording of the encounter that occurred between the defendant and the victim. With respect to the second question, while we reject the defendant's contention that the unavailability of the video required automatic exclusion of the officer's identification

---

[1] The record does not reflect what medium was used to store the video.

testimony, we conclude that the Commonwealth had to lay sufficient foundational facts to enable the jury to make their own findings about the accuracy and reliability of the officer's identifications. The Commonwealth did not meet either of these requirements. The admission of the officer's testimony was therefore an abuse of discretion, and, because the Commonwealth's case rested on that testimony, the error was prejudicial. Accordingly, we vacate the conviction.

Background. There is no dispute that some sort of incident occurred between the defendant and the victim, Carol White, on July 1, 2014, at an apartment building in Everett. As a result of that incident, the defendant was charged in August of 2014 with assault and battery.[2]

Prior to trial, which occurred in July of 2015, the defendant moved to prevent the Commonwealth's sole witness, Everett police Officer Paul Giardina, from testifying as to his observations of the missing video. The defendant argued, among other things,[3] that his attorney would have no effective way of

---

[2] The defendant was initially charged with assault and battery on a person over sixty years of age and threatening to commit a crime. The threat charge was dismissed prior to trial, and the charge of assault and battery on a person over sixty years of age was later reduced to simple assault and battery.

[3] It is likely that the defendant raised additional objections, but we do not know the nature of those objections because portions of the transcript are noted as "inaudible."

cross-examining the officer without having seen the video himself, that the officer's testimony would be hearsay and overly prejudicial, that the video was not properly authenticated, and that there were "issues of identification." In response the prosecutor asserted that the officer could properly testify as to the contents of the video because it never came within the Commonwealth's custody and control; according to the prosecutor, the management of the apartment building had accidentally erased the video in the course of trying to make a copy. The defendant agreed that there was no evidence of "any wrongdoing on the part of the Commonwealth with respect to the destruction of the evidence."

Initially, the judge expressed concerns about "fundamental fairness" to the defendant, stating that "at the very least, he should have been able to view [the video] before being expected to cross-examine the officer about its content." As the judge reasoned, "We don't know the quality of the video. We don't know whether -- well, I assume there would be some testimony, perhaps, about whether it was in black and white or in color; whether it was from a significant distance, and . . . whether there may have been other cameras involved . . . ." But the judge then conveyed uncertainty as to whether these concerns "render[ed] [the officer's testimony] completely inadmissible under the law" or whether they "[went] to the weight of the

evidence." Ultimately, she reserved ruling on the motion, indicating that she would determine the admissibility of the officer's testimony at trial.

The defendant invoked his right not to testify at trial and called no witnesses. Thus, the sole witness was Officer Giardina, who testified as follows. At approximately 10:10 P.M. on July 1, 2014, Officer Giardina was dispatched to an apartment building at 19 Hancock Street in Everett, where he spoke with both White and the defendant. He observed that White was "elderly," was "having a tough time walking around," and "appeared a little confused." The defendant told the officer that he had been in the community bathroom with his girl friend and accidentally bumped White over when he opened the bathroom door. The officer did not arrest the defendant because "it appeared that it was an accident."

About a month later, on August 7, 2014, Officer Giardina returned to the apartment building and spoke again with the defendant. This time, the defendant admitted that he and White "had a small argument" before going their separate ways. The defendant also admitted that he made contact with White twice: first, when he knocked her over with the bathroom door, and second, when he bumped into her in the hallway. According to the defendant's description of this second incident, after he "walked down the hallway and came back," he "was turned around

looking away from [White]" when "she came up behind him"; at that point he "quickly turned around," "didn't realize she was there," and "just threw his hands up to stop her and knocked her down."[4]

That same day, Officer Giardina met with Mitch Crouse, who he "believe[d] . . . was one of the building supervisors." The officer testified, over the defendant's objection, that Crouse showed him "video of the incident." He then described the contents of the video, again over the defendant's objection, as follows:

> "In the video you can see Mrs. White going to the bathroom door. The door swings open. You see Mrs. White go into the bathroom and then she comes out from the bathroom and you also see Mr. Connolly come out from the bathroom. They go their separate ways, one down one end of the hallway [inaudible word]. Mr. Connolly was walking away from the bathroom. Mrs. White was still by the bathroom door. There's no audio on the video but it appears that they're having some sort of shouting match. And then Mr. Connolly walks back towards Mrs. White and shoves her to the ground."

Responding to follow-up questions from the prosecutor, Officer Giardina stated that the defendant walked "[m]aybe 20, 30 feet" down the hall before coming back toward White and using "[t]wo hands" to "shov[e] her." Later, on redirect examination, the

_____

[4] Although Officer Giardina initially suggested that the defendant's July 1 and August 7 statements were conflicting, he agreed on cross-examination that they were consistent. The officer also agreed that the defendant was "forthright and open" during his interviews.

officer reiterated that he saw the defendant "walk[] up to [White] and lift[] his arms and push[] her."

On cross-examination defense counsel asked Officer Giardina a series of questions about the camera angles and quality of the video, eliciting testimony that the video was "black and white" and facing "straight down the hallway." The remainder of defense counsel's questions sought mostly to test the accuracy of the officer's recollection of what he saw on the video. In response to that line of questioning, the officer admitted that he could not remember if the defendant had his head up or down as he was walking down the hallway. He also admitted that the defendant was walking "at a regular pace" and that there was no altercation or apparent conversation between him and White after she fell to the ground.

During her closing argument, the prosecutor emphasized the testimony elicited on cross-examination about the quality of the video, asserting that Officer Giardina "had a clear view straight down the hallway of these two individuals, Mr. Connolly, the defendant, and Miss White." The prosecutor also urged the jury to reject the defense's theory that the contact was accidental and credit Officer Giardina's testimony that the video showed the defendant "throw[ing] up his arms and push[ing] White, knocking her down." The following passage illustrates the nature of the prosecutor's argument:

> "[W]hat you heard from Officer Giardina is that the defendant lifted his hands and he pushed Miss White, knocking her to the ground.  And what was the viewpoint on that?  It was straight down the hallway.  Yes, it was in black and white; but that doesn't mean you can't see somebody commit an act.  Officer Giardina had talked to Miss White.  Officer Giardina had talked to Mr. Connolly.  He could recognize these individuals even if the video was in black and white.  Do those details really matter?  That's up to you to decide based on what you heard from Officer Giardina."

After less than one-half hour of deliberations, the jury found the defendant guilty of assault and battery.  At sentencing defense counsel again voiced his objection to the officer's testimony, asserting that the "whole case was based upon the evidence that came in . . . as observations from a video tape," and he was "significantly limited in [his] cross-examining . . . because [he] ha[d] not seen that video."  The judge ultimately sentenced the defendant to six months of probation.

Discussion.  To put our analysis in context, we note at the outset what is not at issue in this appeal.  First, this case does not implicate the best evidence rule, which provides that "[a]n original writing or record is required in order to prove its content."  Mass. G. Evid. § 1002 (2017).  See Commonwealth v. DeJesus, 87 Mass. App. Ct. 198, 200 (2015).  This is so, in part, because the rule excuses production of the original record where it was "lost or destroyed, and not by the proponent acting in bad faith."  Mass. G. Evid. § 1004(a).  See DeJesus, 87 Mass.

App. Ct. at 200, quoting from Commonwealth v. Ocasio, 434 Mass. 1, 6 (2001) ("[W]here the contents of a document are to be proved, the party must either produce the original or show a sufficient excuse for its nonproduction").  As noted, the defendant has made no suggestion that the Commonwealth lost the video in bad faith.[5]  Second, the defendant did not move to dismiss on the ground that the missing video was "potentially exculpatory," which would have required him to demonstrate that there was a "reasonable possibility based on concrete evidence rather than a fertile imagination that access to the [video] would have produced evidence favorable to his cause."  Commonwealth v. Cintron, 438 Mass. 779, 784 (2003), quoting from Commonwealth v. Neal, 392 Mass. 1, 12 (1984).  Third, the defendant does not renew his argument that the officer's testimony was inadmissible hearsay.  Last, while the defendant asserts that his attorney was prevented from conducting an effective cross-examination of the officer, he does not raise any independent argument that the admission of the officer's testimony violated his right of confrontation under either the Sixth Amendment to the United States

---

[5] Also, the best evidence rule does not apply to videotapes, at least in the sense that "a properly authenticated copy" of a videotape "would be admissible if otherwise relevant." Commonwealth v. Leneski, 66 Mass. App. Ct. 291, 294 (2006).  See Mass. G. Evid. § 1001(a) ("[V]ideotapes . . . are not writings or records").

Constitution or art. 12 of the Massachusetts Declaration of Rights.

We confine our analysis to the two arguments that are squarely raised in the defendant's brief:  (1) that the officer's testimony should not have been admitted because the Commonwealth failed to authenticate the video; and (2) that the officer's identifications of the defendant and White constituted inadmissible lay opinion testimony.  We review the judge's determination of both of these issues for abuse of discretion. See Commonwealth v. Rogers, 459 Mass. 249, 268 (2011); Commonwealth v. Despres, 70 Mass. App. Ct. 645, 651 (2007). [6]

1.  Authentication.  The requirement of authentication calls for the trial judge to make a threshold determination that "there is evidence sufficient, if believed, to convince the jury by a preponderance of the evidence that the item in question is what the proponent claims it to be."  Commonwealth v. Purdy, 459 Mass. 442, 447 (2011) (quotation omitted).  See Mass. G. Evid. § 901.  Authenticity can be established through "testimony of a witness either '(1) that the thing is what its proponent represents it to be, or (2) that circumstances exist which imply

---

[6] The Commonwealth agrees that both arguments were preserved and should be reviewed to determine whether the judge abused her discretion and, if so, whether the error resulted in prejudice to the defendant.

that the thing is what its proponent represents it to be.'" Commonwealth v. Williams, 456 Mass. 857, 868 (2010), quoting from Commonwealth v. Nardi, 452 Mass. 379, 396 (2008). At issue here is whether authentication is required when the thing to be authenticated, a video recording, is not available but testimony about its content is offered. According to the defendant, even though the recording itself was not available, the Commonwealth still had to lay a foundation establishing that the video that Officer Giardina watched was in fact a fair and accurate representation of the July 1, 2014, encounter between the defendant and White. The Commonwealth, on the other hand, asserts, summarily, that "there can be no authentication issue where the recording is not actually admitted into evidence." In the Commonwealth's view, any questions about the evidentiary value of the officer's testimony go solely to the weight of the evidence, and not its admissibility.

We reject the premise that the unavailability of the video relieved the Commonwealth of any obligation to establish, as a condition of admissibility, that what Officer Giardina watched was a fair and accurate depiction of the events in question. Of course, had the video been available at trial, the Commonwealth would have had to authenticate it before it could be admitted. See Commonwealth v. Pytou Heang, 458 Mass. 827, 855 (2011); Commonwealth v. Rogers, 459 Mass. 249, 267 (2011). This

would typically be done through one of two means -- having an eyewitness testify that the video is a fair and accurate representation of what he saw on the day in question, or having someone testify about the surveillance procedures and the methods used to store and reproduce the video material. See Pytou Heang, 458 Mass. at 855 (surveillance videotape authenticated by eyewitness who testified that it was fair and accurate representation of incident); Commonwealth v. Leneski, 66 Mass. App. Ct. 291, 295 (2006) (compact disc containing digitally recorded surveillance authenticated by witness who "testified as to the procedure he used in the surveillance process, the copying process, and to the contents of the [compact disc]").  But because the video was lost, the Commonwealth offered Officer Giardina's testimony as secondary evidence of its contents.  It logically follows that, in order for this secondary evidence to be admissible, the Commonwealth had to lay enough foundation to "allow a reasonable jury to conclude" that the primary evidence, the video the officer watched, was in fact what he represented it to be.  Purdy, 459 Mass. at 449.

We draw support for this conclusion from cases requiring the proponent of a "communication sought to be introduced in evidence" to first establish its "authenticity," irrespective of whether the communication is introduced through testimony or a

physical item of evidence.  Ibid.  For instance, "authentication" is required to admit testimony about "the substance of a telephone conversation."  Commonwealth v. Howard, 42 Mass. App. Ct. 322, 324 (1997).  See Mass. G. Evid. § 901(b)(6).  This means that, before a witness can testify about what was said during a telephone conversation, the proponent of the testimony must first "authenticate the conversation" by laying sufficient foundation to establish the identity of the other person on the line.  Purdy, 459 Mass. at 449.  Accord Commonwealth v. Anderson, 404 Mass. 767, 770 (1989); Howard, 42 Mass. App. Ct. at 324-325.  Similarly, to admit testimony about the substance of electronic messages, the proponent must "authenticate the messages" through foundational testimony establishing the "identi[ty] [of] the person who actually sent the communication."  Williams, 456 Mass. at 869.

Applying the reasoning in these cases, we conclude by analogy that, in order for Officer Giardina's testimony about the contents of the missing video to be admissible, the Commonwealth first had to lay sufficient foundational facts to demonstrate, by a preponderance of the evidence, that the video was a genuine representation of the events that occurred on the night of July 1, 2014.  The Commonwealth came far short of meeting that burden, and it does not argue otherwise in its brief.  The only foundation laid was the officer's testimony

that he spoke with Crouse on August 7, 2014; that he "believe[d]" Crouse to be "one of the building supervisors"; that "[t]here was video of the incident"; and that he watched the video. The Commonwealth presented no evidence identifying the date and time of the video or the place shown in it. It did not call Crouse to testify about the surveillance procedures in the building -- for example, about the placement of the cameras and the nature of the equipment -- or about the circumstances that led him to view the video, and show it to the officer, over one month after the incident. Moreover, despite common knowledge that video images, particularly digital images, can be manipulated, the Commonwealth presented no evidence about how the video material was stored during the intervening month between the incident and the officer's viewing. It also did not lay a foundation through an eyewitness to the incident. Cf. Pytou Heang, 458 Mass. at 855.

In short, the evidence did not come close to establishing a sufficient foundation for the jury to determine that the video was what Officer Giardina claimed it to be -- a fair and accurate recording of the incident that occurred between the defendant and White on July 1, 2014. See Williams, 456 Mass. at 869 (testimony about messages sent from MySpace Web page inadmissible where foundational evidence established only that they were sent by someone with access to Web page and no expert

testimony was presented regarding Web page's security). Nor was it even possible for the Commonwealth to lay the necessary foundation through the officer's testimony. The officer was not an eyewitness to the incident and had no personal knowledge about the surveillance procedures in the building or how the video was stored. Cf. Pytou Heang, 458 Mass. at 855; Leneski, 66 Mass. App. Ct. at 295. Thus, in any retrial, the Commonwealth will have to establish the authenticity of the video through someone else's testimony.[7]

2. Lay opinion on identification. We turn to the defendant's argument that Officer Giardina's identifications of the defendant and White constituted inadmissible lay opinion, as this issue could recur at any retrial.[8] Here, too, we conclude

---

[7] We note that, even were the video properly authenticated, the judge could still exclude testimony about its contents if the probative value of the testimony is substantially outweighed by the danger of unfair prejudice to the defendant. See Commonwealth v. Rogers, 459 Mass. 249, 267 (2011); Mass. G. Evid. § 403.

[8] The Commonwealth asserts that identity is not at issue because the defendant did not dispute that he and White had an encounter in the hallway of the apartment building. While we agree that this case is not so much about identity, but more about the details of the encounter, the defendant did not stipulate that he was the person in the video, he objected to the officer's identification testimony at trial, and he presses the issue on appeal. See Commonwealth v. Ramsey, 79 Mass. App. Ct. 724, 730 n.9 (2011) (describing procedures for resolving facts by stipulation in criminal trials). We will therefore address his argument.

that the Commonwealth failed to lay an adequate foundation to admit the officer's testimony.

A lay opinion is only admissible at trial if it "is (a) rationally based on the witness's perception; (b) helpful to a clear understanding of the witness's testimony or in determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of [Mass. G. Evid.] Section 702."  Mass. G. Evid. § 701. See Commonwealth v. Canty, 466 Mass. 535, 541 (2013).  "The identity of a third person always is a matter of inference and opinion . . . ."  Commonwealth v. Cappellano, 392 Mass. 676, 679 (1984), quoting from Commonwealth v. Kennedy, 170 Mass. 18, 24 (1897).  See Commonwealth v. Austin, 421 Mass. 357, 366 (1995); Commonwealth v. Pleas, 49 Mass. App. Ct. 321, 323-324 (2000).  Normally, in determining whether to admit a witness's identification of a person in a video, the key question for the judge to consider is whether the witness's testimony would help the jury to make their own identification.  Pleas, 49 Mass. App. Ct. at 326.  As explained in Pleas, the witness's testimony is helpful in this respect if "there is some basis for concluding that the witness is more likely to correctly identify the [person] from the [video] than is the jury."  Ibid. Accord Commonwealth v. Vacher, 469 Mass. 425, 441 (2014). Factors relevant to this inquiry include (1) whether the video

is "so unmistakably clear or so hopelessly obscure that the witness is no better-suited than the jury to make the identification"; (2) "the level of familiarity of the witness with the person shown in the [video]"; and (3) whether the person "[was] disguised in the [video] or has changed his appearance since the time of the crime." Pleas, 49 Mass. App. Ct. at 325-326 (quotation omitted).

The parties appear to agree that the Pleas analysis is of limited utility in this case because two of the factors -- whether the quality of the video is such that the witness is in no better position than the jury to make the identification, and whether the person on the video was disguised or has changed his appearance by the time of trial -- presume that the recording is available at trial for the jury to view. From there, the parties' positions diverge. The Commonwealth argues that, because the video itself was not available, Officer Giardina's "opinion testimony identifying the defendant as the assailant" was necessarily helpful to the jury because they "lack[ed] the ability to view the image or recording" with their own eyes. Conversely, the defendant argues that the officer's opinion was necessarily unhelpful to the jury because they were "unable to view the video and make [their] own identifications"; thus, in the defendant's view, the officer's testimony was categorically

inadmissible because it "only supplant[ed] the jury's role as fact-finder."

The parties have cited no Massachusetts reported decisions addressing this question, but the overwhelming weight of authority from other jurisdictions permits testimony about the contents of a video recording that is innocently lost or destroyed,[9] which counsels against the categorical exclusion urged by the defendant. Two of those cases, State v. Robinson, 118 A.3d 242 (Me. 2015), and State v. Thorne, 173 N.C. App. 393 (2005), specifically addressed whether a witness's identification testimony constituted inadmissible lay opinion. In Robinson the court held, as a matter of first impression in Maine, that "identification testimony reporting observations of a photo or video that has been lost or destroyed" is admissible so long as a sufficient foundation is laid to establish (1) that "the witness's testimony [is] adequately grounded in his own firsthand knowledge" and (2) that, "[e]ven if the video were available at trial," the witness would be "in a better position

---

[9] See, e.g., Pritchard v. State, 810 N.E.2d 758, 760-761 (Ind. Ct. App. 2004); State v. Thorne, 173 N.C. App. 393, 396-399 (2005); State v. Rollins, 46 Kan. App. 2d 17, 27-29 (2011); Hammock v. State, 311 Ga. App. 344, 344-345 (2011); Yero v. State, 138 So.3d 1179, 1184-1185 (Fla. Dist. Ct. App. 2014); State v. Robinson, 118 A.3d 242, 248-252 (Me. 2015).

than the jurors to make the identification."[10] 118 A.3d at 250. This first requirement was met in Robinson by the witness's testimony that he was familiar "not only with [the defendant's] physical attributes, but also with his body movements, as the result of working with him for two years." Ibid. The second requirement was met by the witness's testimony that the missing video "was not so 'hopelessly obscure' that the [witness] could not better identify [the defendant] in the video than could a jury." Ibid.[11]

---

[10] We part ways with the court in Robinson with respect to this second requirement. The requirement adopts a variant of the Pleas analysis, under which the court first assumes an imaginary state of affairs where the video has not gone missing, and then analyzes whether, in this imaginary state, the witness would be "better" able than the jury to make the identification. Robinson, 118 A.3d at 250. We think this makes little sense because the Pleas analysis exists solely to assess the helpfulness of identification testimony when the video is in fact available to the jury at trial. See 49 Mass. App. Ct. at 425-426. The reason for the Pleas analysis is that, if the jury can see the video with their own eyes, they have the ability to draw their own opinion about whether the defendant is the person in the video; thus, they do not need a witness's help unless he has some superior knowledge that puts him in a better position to make the identification. On the other hand, if the jury cannot see the video, they have no basis on which they can form their own opinion. In that situation it makes no sense to assess the helpfulness of the witness's testimony by asking whether he is better able to make the identification than the jury. As discussed below, we think the more appropriate measure of helpfulness is whether the proponent of the testimony has provided adequate foundational facts to enable the jury to test the accuracy and reliability of the witness's identification.

[11] In our view the quality of the video is relevant to whether the witness's identification is rationally based on his

Similarly, in Thorne the court held that the trial judge properly allowed a police officer to testify about the contents of a lost videotape, including that he perceived the gait of the perpetrator on the videotape to be similar to that of the defendant. 173 N.C. App. at 398-399. This opinion testimony was permissible, the court concluded, because it was accompanied by foundational testimony that the officer was "trained to notice differences in the actual ways people walk," "had observed the defendant's gait in the past," and "observed the [perpetrator's] gait on the videotape several times." Id. at 399.

We find the general approach of these cases persuasive and decline the defendant's invitation to adopt a categorical rule excluding identifications made from surveillance videos that are later lost or destroyed through no fault of the Commonwealth. The fact that Officer Giardina made his identifications from a video does not, on its own, render his opinion so unreliable that it should be excluded. We allow witnesses to give identification testimony even when they have used visual aids, such as binoculars, to make the identification. See Commonwealth v. Grace, 43 Mass. App. Ct. 905, 906-907 (1997). Other jurisdictions have allowed witnesses to testify

---

perception, not to whether the witness is "better" able than the jury to identify the defendant from the missing video.

as to identifications made by means of live video feeds. See, e.g., People v. Tomei, 986 N.E.2d 158, 165 (Ill. Ct. App. 2013), quoting from People v. Tharpe-Williams, 286 Ill. App. 3d 605, 611 (1997) ("A witness's testimony about what he or she observed on a live video feed is no different than if he or she 'had been 100 yards away from defendant at the time of the incident but . . . needed a telescope to observe what was happening'"). Likewise, we think that an identification made from a lost or destroyed video is admissible so long as the appropriate foundation is laid and the testimony is not excludable under some other evidentiary rule. See Pritchard v. State, 810 N.E.2d 758, 760 (Ind. Ct. App. 2004) (prison officials' recounting of what they saw on "purged" video recording was "no different," for purposes of admissibility, "than if they had been standing on [the] cell block . . . observing the incident"). The judge could still, however, exclude the identification if its probative value is substantially outweighed by the risk of unfair prejudice to the defendant. See Pleas, 49 Mass. App. Ct. at 327-328; Mass. G. Evid. § 403. Cf. Commonwealth v. Johnson, 473 Mass. 594, 599 (2016), quoting from Commonwealth v. Jones, 423 Mass. 99, 107 (1996) (judge can "exclude a suggestive and unreliable eyewitness identification" if it "is more prejudicial than probative").

Here, the Commonwealth did not lay enough foundation to establish that Officer Giardina's identifications of the defendant and White were "rationally based on [his] perception" and "helpful to a clear understanding of [his] testimony or in determining a fact in issue."  Mass. G. Evid. § 701.  The extent of the foundational testimony was that Officer Giardina spoke to White and the defendant on July 1, 2014; that White appeared "elderly" and had trouble walking; and that he met again with the defendant on August 7, 2014.  The officer gave no description of the defendant's physical characteristics, such as his height, build, or gait.  Cf. Robinson, 118 A.3d at 250. With respect to his perceptions of the video, the officer provided no testimony at all explaining how he could positively identify White and the defendant as the individuals on the video.  He did not describe the physical characteristics of either individual, and, other than his testimony on cross-examination that the video was "black and white" and facing "straight down the hallway," he provided no details about the quality of the video and whether it was good enough to enable him to make an identification.  Cf. ibid.  Instead, the officer simply stated that "[i]n the video you can see Mrs. White" and "Mr. Connolly" and then proceeded to describe his observations of their encounter.

Because the officer did not explain how he came to the conclusion that the people on the video were White and the defendant, his opinion was not helpful to the jury. "When a witness has not identified the objective bases for his opinion," the opinion is inadmissible because it "does not help the jury but only tells it in conclusory fashion what it should find." United States v. Hampton, 718 F.3d 978, 981 (D.C. Cir. 2013). See United States v. Freeman, 730 F.3d 590, 597 (6th Cir. 2013) (lay opinion should not "merely tell the jury what result to reach" [quotation omitted]). For the officer's identification testimony to be helpful, therefore, he had to provide enough information to allow the jury to conduct an independent assessment of the accuracy and reliability of his identifications. Instead, the officer simply told the jury that the individuals in the video were White and the defendant. Rather than being helpful, this testimony usurped the jury's role as the finder of fact, and it should not have been admitted. See Hampton, 718 F.3d at 983 (case agent's testimony interpreting defendant's telephone conversations based on his review of some 20,000 recorded calls, only small number of which were played for jury, was improper lay opinion because "jury had no way of verifying his inferences or of independently reaching its own interpretations"); United States v. Grinage, 390 F.3d 746, 750 (2d Cir. 2004) (similar); Freeman, 730 F.3d at 597

(similar).  Cf. <u>Cappellano</u>, 392 Mass. at 679 (identification had sufficient foundation where witness testified he saw his assailant, who came within two feet of him, approximated assailant's height and weight, and gave detailed account of assailant's movements).

3.  <u>Prejudice to the defendant</u>.  We need not dwell long on whether the erroneous admission of Officer Giardina's testimony prejudiced the defendant.  His testimony was the Commonwealth's only evidence.  The error was therefore plainly prejudicial.

We note, in addition, that we have found no case, from any jurisdiction, in which a defendant was convicted based solely on the testimony of a witness reporting what he observed on a surveillance video that was destroyed before the defense had an opportunity to view it.  Here, that lack of opportunity seriously hampered defense counsel's ability to conduct an effective cross-examination.  Indeed, when counsel tried to cross-examine the officer about the quality of the video, he only succeeded (through no fault of his own) in soliciting testimony favorable to the Commonwealth -- that the video gave the officer a straight view down the hallway.  The prosecutor then relied heavily on this testimony in her closing argument.

The unfair prejudice to the defendant was heightened by the fact that the officer's testimony was offered not just for the purpose of identification, but also as the only substantive

evidence of the alleged crime.  The officer's description of the defendant "shoving" the victim with two hands directly contradicted the theory of the defense, and the jury had no information that would have allowed them to independently assess the reliability of that description.  For all practical purposes, the jury's role was limited to crediting the officer's testimony in toto or rejecting it in toto.  We note our doubts as to whether the defendant could have ever received a fair trial in these circumstances.  See United States vs. Brown, U.S. Dist. Ct., No. 08-0098, slip op. at 5 (W.D. Pa. July 29, 2009) (probative value of testimony about contents of destroyed video was substantially outweighed by danger of unfair prejudice because it would be "extremely difficult for defendant's counsel to cross-examine the[] witnesses as to the accuracy of their recollection given that counsel ha[d] not viewed the video and d[id] not have any other objective account of the content of the tape with which to compare"); People v. Sykes, 972 N.E.2d 1272, 1280-1283 (Ill. Ct. App. 2012) (reversible error to admit witness's testimony that he watched original videotape, which was clearer than one before jury, and saw defendant commit alleged crime, as such testimony "invaded the province of the jury").  Cf. Vacher, 469 Mass. at 442 (erroneous admission of identification testimony harmless because "jury were capable of drawing the same conclusion" from photographs in

evidence); <u>Commonwealth</u> v. <u>Anderson</u>, 19 Mass. App. Ct. 968, 969 (1985) (erroneous admission of identification testimony harmless where photographs were in evidence, "permitting the jury to decide

independently whether the defendant was the person on film").[12]

<u>Judgment vacated</u>.

<u>Verdict set aside</u>.

---

[12] The defendant raises a third claim of error that his constitutional right against self-incrimination was violated when he was asked to recite his plea of not guilty in front of the jury. Although the better practice might have been to take the plea outside the presence of the jury, the defendant did not object to the procedure employed by the judge and has failed to demonstrate on appeal that any error resulted in a substantial risk of a miscarriage of justice. See <u>Commonwealth</u> v. <u>Gilman</u>, 89 Mass. App. Ct. 752, 763 (2016).